Fuld, J.
Certified questions call upon us to say whether a director of a corporation may continue to maintain an action, brought by him while a director on behalf of the corporation, pursuant to section 61 of the General Corporation Law, after he has been defeated for re-election to such office.
In May of 1957, Warren S. Tenney became a director of the New York Water Service Corporation and in December of that year commenced this suit, as director, pursuant to section 61 of the General Corporation Law, against fellow directors and a wholly-owned subsidiary of Water Service. The latter is also named as a nominal defendant.
On May 14, 1958, a day before the annual meeting of stockholders to elect directors, the corporate defendants moved to dismiss the complaint on the ground that the plaintiff ‘ ‘ has not legal capacity to sue ” (Rules Civ. Prac., rule 107, subd. 2) and, in support of the motion, the defendants asserted that the plaintiff, not included on the “ slate of persons proposed by Management ”, would not be re-elected as a director at the election to be held on May 15 and that, consequently, the plaintiff would not be in office at the time of the hearing of the motion. The forecast was accurate; the plaintiff was not elected. Then, on May 16, the day following the election, and after their time to make motions had expired, the individual defendants moved, nunc pro tunc as of May 14, to dismiss the complaint on two grounds— (1) pursuant to section 82 of the Civil Practice Act, “ because the action has abated ” and (2) pursuant to rule 107, *208 on the ground, specified in the earlier motion, that the plaintiff “ has not legal capacity to sue
The court at Special Term, ruling in favor of the defendants, dismissed the complaint. The Appellate Division, however, unanimously reversed and denied the defendants’ motions. It granted leave to appeal, certifying two questions for our review.
It is sufficient, for present purposes, to observe that the four causes of action alleged in the complaint before us assert breaches by the defendant directors of the duties owed by them to their corporation. The first cause of action alleges that the defendant directors have exceeded their authority to manage the business of the corporation by making ultra vires investments of corporate funds; the second, third and fourth causes of action charge that the defendant directors severally named therein have failed to discharge their duties to the corporate defendant by wasting the corporate assets through excessive or unlawful payments to or for the benefit of certain individual defendants. These causes of action are unquestionably within the scope of section 60 of the General Corporation Law and were properly brought, pursuant to section 61, by the plaintiff as a director of the corporation. These causes, it is manifest, do not assert a right which is personal to the plaintiff or a right which belongs to him by virtue of his status as director. The right which he seeks to vindicate in each cause of action is the right of the corporation to the faithful services of its directors in the management of its corporate affairs and, quite obviously, this right of the corporation, as well as the causes of action for the alleged breaches of duty by the defendant directors, survive unaffected by the fact that the plaintiff is no longer a director.
Section 82 of the Civil Practice Act declares, in terms clear and unambiguous, that1 ‘ An action does not abate by any event if the cause of action survives or continues”, and since 1924 the courts of this State have consistently held that, while a director’s right to bring the action does not exist after he has been defeated for re-election, the cause of action survives because it is brought for the benefit of the corporation; in other words, the action, once properly initiated, may not be defeated by the circumstance that the plaintiff loses, or is ousted from, his directorship. (See Manix v. Fantl, 209 App. Div. 756, 758-759; Wangrow v. Wangrow, 211 App. Div. 552, 557-558; *209 Abberger v. Kulp, 156 Misc. 210 [Erie County]; Wyckoff v. Sagall, 16 Misc 2d 630, 631 [New York County]; Handler v. Belmare Light. Co., 8 Misc 2d 687, 691 [Kings County]; but see, contra, Kehaya v. Axton, 32 F. Supp. 266.) We agree with these views.
Matter of Cohen v. Cocoline Prods. (309 N. Y. 119), upon which the appellants rely, has nothing to do either with section 61 of the General Corporation Law or with the case before us. We simply held that, since a director’s absolute, unqualified right to inspect books is a personal right and is merely a procedural adjunct of his duty to keep informed of corporate matters, his absolute right terminates and becomes but a qualified one when his duty as director ceases. The plaintiff is not here suing to enforce a personal right given to him at common law so that he may keep himself informed. Bather, he brought suit on behalf of his corporation to vindicate a status given by statute and pursuant to statutory authorization.
Having concluded that the action has not abated, we are brought to the second certified question, which we interpret as posing the issue whether the plaintiff has standing to continue to prosecute the action now that he is no longer a director. Concededly, he had the legal capacity to bring the action, when he did, by virtue of the provisions of the statute (General Corporation Law, § 61), and we see no basis for holding that he lost that capacity or suffered a disqualification when he failed to be re-elected as director.
The plaintiff, and there can be no doubt of this, is prosecuting this action, in the right and for the benefit of the corporation, in a fiduciary capacity which “ may not inaptly be compared to that of a guardian ad litem (Whitten v. Dabney, 171 Cal. 621, 625, 631-632; see, e.g., Denicke v. Anglo California Nat. Bank, 141 F. 2d 285, 288, cert, denied 323 U. S. 739; Goodwin v. Castleton, 19 Wn. [2d] 748, 763.) The plaintiff is privileged to continue in such fiduciary capacity to prosecute the action for the benefit of the corporation so long as there is no compelling reason to remove him from his trust. To remove bim, it is not enough that the corporation, controlled by the very directors accused of negligence or misconduct, request that some one else, an unnamed person, prosecute the action on its behalf; a persuasive case has to be made out to establish that the proper *210 protection of the corporation’s interest or the proper conduct of the litigation would be better served by the elimination or a change in the identity of the guardian ad litem. For example, following the analogy of Ream v. Ream (281 N. Y. 395), which held that a minor upon reaching majority is entitled to take control of an action on his behalf from his guardian ad litem, the corporation would be entitled to take control of an action if it could show that it was managed by a board of directors in no way involved in the misconduct alleged in the complaint. It may also be that, in a proper case, the plaintiff should be disqualified for conflict of interest or some other reason. In our opinion, however, the fact that the plaintiff has failed of re-election as a director does not automatically bar him from continuing to prosecute the action for the benefit of the corporation.
Strong reasons of policy dictate that, once he properly initiates an action on behalf of the corporation to vindicate its rights, a director should be privileged to see it through to conclusion. Other directors, themselves charged with fraud, misconduct or neglect, should not have the power to terminate the suit by effecting the ouster of the director-plaintiff. It is no answer to say that, if wrongs were committed, others are available to commence a new and appropriate action.
To support their position, the defendants urge the analogy of derivative suits brought by shareholders, wherein it has been held that the plaintiff loses his right to continue to prosecute the action if he ceases to be a shareholder. (See Gleicher v. Times-Columbia Distrs., 283 App. Div. 709; Smith v. Industrial Acceptance Corp., 265 App. Div. 931; Johnson v. Baldwin, 221 S. C. 141.) While there may be many similarities between the derivative action brought by a shareholder and one brought by a director — in both cases the action is prosecuted in the right and for the benefit of the corporation — there are important reasons why the rule of automatic disqualification upon loss of status should not be extended to the director’s action.
In the first place, the shareholder’s action was developed by the courts of equity in large measure to avoid a multiplicity of suits by shareholders similarly damaged by the negligence or misconduct of corporate directors. (See Prunty, The Share *211 holders’ Derivative Suit: Notes on its Derivation, 32 N. Y. U. L. Rev. 980.) The shareholder is under no fiduciary duty to the corporation prior to the institution of the action. When he sues derivatively, he does so as a volunteer insofar as his fellow shareholders are concerned; he is authorized to proceed only because of his proprietary interest in the corporation. It is significant that in 1944, when the Legislature undertook to combat abuses of the shareholder’s derivative action, the remedial legislation sought to strengthen the proprietary interest of the plaintiff in two ways: first, by requiring a showing that he was a shareholder at the time of the transaction of which he complained (L. 1944, ch. 667; General Corporation Law, § 61); and, second, by providing for his posting of security for litigation expenses unless his proprietary interest amounted to at least 5% of the outstanding shares of any class or was worth at least $50,000 (L. 1944, ch. 668; General Corporation Law, § 61-b). In a very real sense, in modern theory, the standing of the shareholder is based on the fact that, when he sues derivatively, he is defending his own interests as well as those of the corporation. If he disposes of his shares after initiating the derivative action, he destroys the technical foundation of his right to continue to prosecute the suit.
The situation is, obviously, quite different in the case of the director’s derivative suit. His right to sue is based on the public policy declared by the Legislature upon enactment of the statute. We may assume that the right to bring suit has been granted in order to facilitate and improve the director’s performance of the “stewardship obligation” which he owes to the corporation and its stockholders and to protect him from possible liability for failure to proceed against those responsible for improper management of the corporate affairs. (See Matter of Cohen v. Cocoline Prods., 309 N. Y. 119, 123, supra.) Consequently, the director is not a volunteer and there is no equitable ground for holding that he automatically forfeits his standing to continue to prosecute the action if he thereafter ceases to be a director. The analogy of the shareholder’s action is not persuasive here because no proprietary interest is involved. The analogy must be sought elsewhere. We have suggested that of the guardian ad litem. Once he has been properly appointed, as the director has been in this action, his standing is in no way affected by the fact that he is a stranger *212 to his ward. His fiduciary obligations as guardian ad litem are separate from those which he had prior to the commencement of the action and are in no way diminished by his loss of status as a director.
In the second place, it is logical to hold, in the case of the shareholder’s derivative action, that, by the sale of his stock, the plaintiff forfeits his right to continue to prosecute the action for the benefit of the corporation. By the voluntary abandonment of his personal interest in the litigation, he has also by implication abandoned the cause of the corporation. However, no such abandonment of the corporate cause of action is inferable when the plaintiff director has failed of re-election as a director. For example, it may well be that a majority of the shareholders in a close corporation will vote against a director who properly insists that the corporation be managed for the benefit of all the shareholders, rather than only of the majority. Or, it may happen in a publicly held corporation that the proxies of quiescent shareholders will be voted against a director who has sought to expose wrongdoing by the same dominant directors who actually cast the votes. In such situations, it would hardly be argued that a director’s loss of status implies a voluntary abandonment of the corporation’s cause of action. If anything, the plaintiff’s failure of re-election may be simply another aspect of the unhealthy corporate condition which he is intent upon correcting.
In the present case, the record reveals that the plaintiff in 1957 had been elected a member, under the cumulative voting procedure, of a board of eight directors. After he instituted this action against the dominant directors, the latter exercised their power to reduce the membership of the board from eight to five. This made it mathematically more difficult for the plaintiff to be re-elected in 1958. Indeed, the record discloses that the dominant directors announced, prior to the election, that the plaintiff would be defeated. The defendants have pointed out that the plaintiff would have lost even if there had been no reduction in the number of directors. This, though, is not material; the pertinent fact is that the plaintiff did not voluntarily abandon his trust.
In the third place, the rule of automatic disqualification of the plaintiff shareholder in a derivative action, when he ceases *213 to be a shareholder, is but one of a group of related rules worked out by the courts to sustain such suits while avoiding some of their potential abuses. This effort is still in the process of development. (See Clarke v. Greenberg, 296 N. Y. 146; cf. Fed. Rules Prac., rule 23, subd. [c].)
The statutory authorization for suits by directors seeks to achieve the same end, of vindicating the corporation’s rights by a method less subject to the risk of abuse. In the absence of legislative direction, we do not believe that we are warranted in extending to the director’s derivative action the rule of automatic disqualification of the plaintiff to prosecute the action upon loss of his status. On the one hand, a faithless director might be induced to resign, and thereby betray his trust, perhaps upon inducements from the individual defendants. On the other hand, the individual defendants, by virtue of the power they hold in the corporation, and which it is alleged they have misused, may find it advantageous to defeat the plaintiff’s bid for re-election rather than defend the suit. In either case, the corporation would be left defenseless even though it had—or, perhaps, particularly when it had — a meritorious case. This result can better be avoided by keeping the director as plaintiff so long as it is proper to do so and holding him to the strictest accountability as guardian ad litem for the corporation.
Finally, in view of the defendants ’ further argument, we have explored the record to ascertain whether there are any other compelling reasons to hold the plaintiff barred from going on with the litigation. We need but say that we find none. Even if we were to assume, as the defendants insist, that the plaintiff was motivated by personal gain in bringing this action as director, we perceive no conflict of interest or other ground requiring this court to hold as matter of law that the plaintiff is disqualified from continuing to prosecute the action for the benefit of the corporation.
In sum, then, the action, properly commenced by the plaintiff when he was a director, may not be defeated, either on the theory of abatement or of lack of capacity to sue, by effecting the plaintiff’s ouster as director. The plaintiff’s purpose and plan to bring to account those mismanaging the corporation may not be frustrated or interrupted by any such process. The action *214 is for the benefit of the corporation and, to cull from the opinion in the Manix case (209 App. Div. 756, 759, supra), it should not be terminated “ on account of the mere fact that other directors succeed, by trick or otherwise, in defeating the plaintiff director for re-election. Such a construction of the statute would often render it practically ineffectual.”
The order appealed from should be affirmed, with costs, and the two certified questions answered in the negative.
Chief Judge Conway and Judges Desmond, Dye, Froessel, Van Voobhis and Burke concur.
Order affirmed, etc.