Loring R. HOOVER, Somers H. Smith, G. A. Buder, Jr., Frances Lamer, Clare F. Slutzkin, Howard V. Scotland, Howard V. Scotland, Trustee for Howard V. Scotland, Jr., U.D.T. January 1, 1955, M. Jack Breitbart, and Mrs. Dorothy Bliss Breitbart, in their own behalf as stockholders of Defendant American-Hawaiian Steamship Company, and in behalf of all other stockholders similarly situated, Plaintiffs,

v.

George E. ALLEN, M. J. Frechie, Willard W. Keith, Samuel H. Moerman, James H. Sharp, D. K. Ludwig and American-Hawaiian Steamship Company, Defendants.

United States District Court
S. D. New York.
Jan. 14, 1960.

Loring R. Hoover, New York City, for plaintiffs other than Loring R. Hoover.

Kaufman, Taylor & Kimmel, New York City, for plaintiff Loring R. Hoover. Stanley L. Kaufman, New York City, of counsel.

Lester M. Levin, New York City, for defendant American-Hawaiian S. S. Co.

Hughes, Hubbard, Blair & Reed, New York City, for defendants James H. Sharp, Samuel H. Moerman and D. K.

Ludwig. Harold L. Smith, New York City, of counsel.

WEINFELD, District Judge.

In this derivative action an order was entered upon the parties' stipulation, which provided (a) that all proceedings on the part of Hoover, the sole original plaintiff, be stayed until he was joined by stockholders holding stock of an aggregate market value in excess of $50,000; or (b) until plaintiff gave security in the sum of $75,000. Absent compliance with either condition by May 15, 1959, the action was to be dismissed.

Thereafter, with leave of Court, other stockholders intervened as parties plaintiff on the basis of an amended supplemental complaint. Their joinder brought the total number of shares of the defendant corporation owned by all plaintiffs to 801 with a market value of $88,110.

The defendants thereafter took the depositions of the various interveners. They then made the present motion challenging the method by which the interveners' joinder was secured, and also urging, with respect to specific causes of action, that some of the intervening plaintiffs were not stockholders at the time of the commission of the acts charged therein.

Specifically, the defendants seek an order pursuant to section 61-b of the New York General Corporation Law [1] requiring plaintiffs to give security in the sum of $75,000 (the amount specified in the stipulation) for reasonable expenses in connection with the action.[2] Several grounds are advanced in support of the motion. First, the defendants contend that the intervention of the additional plaintiffs was not in good faith but only colorable and to enable Hoover to avoid compliance with the security provision of section 61-b.[3] The interveners' joinder was the result of a communication addressed by Hoover, not to all stockholders, but to a limited number who, on prior occasions, had supported him in op-

---

1. Jurisdiction is based upon diversity of citizenship.

2. See N.Y. General Corporation Law § 64.

3. Cf. Neuwirth v. Wyman, Sup.Ct.Spec.T., 119 N.Y.S.2d 266, affirmed mem., 1st Dept. 1953, 282 App.Div. 1044, 126 N. Y.S.2d 895.

posing majority interests in the corporation. Hoover, it appears, was no stranger to the affairs of the corporation on whose behalf he brought this action. He had been a director and member of the Executive Committee for twenty years; he and members of his family had been large stockholders. He asserts he had been responsible for the distribution of many thousands of shares of the company's stock to the public. His interest in the affairs of the company had led him in earlier years, 1955 and 1958, to write to stockholders with respect to the alleged breaches of fiduciary duty toward the corporation by its majority stockholder, officers and directors. Each of the interveners [4] on those occasions gave Hoover his respective proxy to vote in favor of certain resolutions which he proposed at annual meetings.

In his most recent communication to these plaintiffs, Hoover frankly stated that their joinder was necessary to meet New York statutory requirements for the maintenance of this derivative action to avoid posting a bond. As a result of this correspondence, and oral communications in the instance of two shareholders, the interveners authorized him to act as their attorney and consented to join the action as coplaintiffs. The authorization, however, specified that they assumed no liability for counsel fees to Hoover, or to any counsel he might employ.[5]

Two of those who joined the action are attorneys and one is a business executive. Their depositions and those of the others indicate they joined for the purpose of prosecuting the claims against alleged recreant officials. Their genuine interest in asserting the corporate claim is manifest from the fact that at least three traveled substantial distances (one across the continent), at their own expense, to submit to the taking of depositions. I find no basis for the charge that their participation or that of the other interveners was colorable or that these stockholders did not feel aggrieved by the transactions complained of or that they "probably were misled regarding their liability for costs and expenses." They had, by reason of earlier correspondence with Hoover, been apprised of the general nature of the charges against the defendants. There is no support for the defendants' contention that because Hoover did not furnish the interveners with the amended complaint or show them copies their interest in the suit is only colorable and, in fact, they are not really aggrieved stockholders.

The fact is that Hoover, as attorney, was authorized by all intervening plaintiffs to sue for them; that the earlier correspondence related to some of the charges against the defendants which were incorporated in the amended supplemental complaint verified by Hoover as one of the plaintiffs and as attorney for all the plaintiffs.

No rule or authority has been cited which requires that in actions where there are multiple plaintiffs each must verify the complaint,[6] or that each plaintiff know the precise details upon which a legal claim of mismanagement by corporate trustees rests, or that he be informed in haec verba of the allegations of the complaint filed pursuant to express authority granted to the attorney.

Defendants also urge that Hoover's statement that he was "assuming all expenses involved in this suit" was misleading in that it implied an intervening stockholder would not subject himself to possible liability for costs and expenses in the event the action failed. No doubt

---

4. Slutzkin and Lamer, since they did not become stockholders of record until December and November 1955 respectively, did not receive Hoover's 1955 letters or give him their proxies in that year. They did receive his letters and give him their proxies in 1958, however.

5. The authorization signed by Howard V. Scotland does not so specify.

6. Some idea of the impracticability of such a requirement is manifest from reference to but one action where 217 stockholders, residing in 94 cities and towns and 26 states, joined in a derivative action. See Fuller v. American Machine & Foundry Co., D.C.S.D.N.Y.1951, 97 F.Supp. 742.

the letter could have been more precise by containing an affirmative statement with respect to a possible judgment for costs, expenses and allowance of counsel fees in the event the suit failed, but nothing has been presented to warrant the conclusion that the interveners were imposed upon or misled. Indeed, the fact that several were attorneys and another an experienced business executive suggests the contrary.

The defendants next contend that since two of the interveners, Smith and Slutzkin, sold their shares of stock respectively five and three months after they joined in the action, it has abated and should be dismissed as to them. The New York state holdings as to whether the sale of stock by a stockholder who has commenced a derivative action disqualifies him from continuing with the suit are not as definitive as might be desired. The defendants rely principally upon Gleicher v. Times-Columbia Distributors, Inc., 1st Dept. 1954, 283 App.Div. 709, 128 N.Y.S.2d 55. A close reading of the per curiam decision leaves open to question the basis of the Court's holding. It appears that the plaintiff was the only stockholder prosecuting the suit. The summary decision mentions several factors including the circumstance that plaintiff's counsel neither argued the appeal nor served any brief, and that the Court had been advised that plaintiff had ceased to be a stockholder of the corporation. The Court then notes the dismissal of the action "for the reasons stated and on the additional grounds that the complaint is insufficient for failure factually to state a cause of action under Rule 106, and that plaintiff lacks capacity to sue under Rule 107 * * *."

However, the Court of Appeals cited this case among others in a sweeping obiter dictum in Tenney v. Rosenthal, 1959, 6 N.Y.2d 204, 189 N.Y.S.2d 158, 160 N.E.2d 463. There the precise holding was that an action properly instituted by a director on behalf of a domestic corporation charging other directors with breaches of duty, did not abate upon the plaintiff-director's failure of re-election. The defendants pressed the disqualification of the director to maintain the suit by analogizing his situation to that of a plaintiff-stockholder who had sold his shares during the pendency of the action. The Court, in rejecting this contention, stated:

"* * * the defendants urge the analogy of derivative suits brought by shareholders, wherein it has been held that the plaintiff loses his right to continue to prosecute the action if he ceases to be a shareholder. (See Gleicher v. Times-Columbia Inc., 283 App.Div. 709 [128 N.Y.S. 2d 55]; Smith v. Industrial Acceptance Corp., 265 App.Div. 931 [38 N.Y.S.2d 379]; Johnson v. Baldwin, 221 S.C. 141 [69 S.E.2d 585]). While there may be many similarities between the derivative action brought by a shareholder and one brought by a director—in both cases the action is prosecuted in the right and for the benefit of the corporation—there are important reasons why the rule of automatic disqualification upon loss of status should not be extended to the director's action." [7]

██ This impressive dictum gives support to the defendants' contention that under New York law, the sale of the shares by the two interveners disqualified them from prosecuting this suit, and that the 300 shares held by them when they joined the action cannot be considered in deciding whether the minimum requirements of section 61-b have been met. This leaves the remaining plaintiffs with a total of 501 shares having

---

7. 6 N.Y.2d at 210, 189 N.Y.S.2d at 162, 160 N.E.2d at 466. Of the cases cited, only the South Carolina one appears to be directly in point. The Court there held: "* * * the right of the plaintiff to continue to prosecute this action depends upon her retaining her status as a stockholder and if she ceased to be a stockholder, the cause of action abated so far as she is concerned. * * * She cannot prosecute an action as a member of a class to which she does not belong." Johnson v. Baldwin, 1952, 69 S.E. 2d 585, 589.

a market value of $55,110, sufficient upon the surface to satisfy the statutory requirement. The defendants acknowledge this only with respect to the fifth, eighth and ninth causes of action. As to the others, they contend the shares of the coplaintiffs Lamer, Scotland as Trustee, and Mrs. Breitbart, may not be counted since the complaint fails to show compliance with the "time of ownership" requirement of Rule 23(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., insofar as those specific causes of action are concerned. In short, the defendants' position is that an intervening stockholder may become a party only to those causes of action which are based upon acts which occurred when he was a shareholder.

The defendants' contention is based upon the claim that the complaint fails to show that any of the corporate stock was acquired by Lamer, Scotland as Trustee, and Mrs. Breitbart earlier than February 1954, and that the various causes of action as to which there is a claimed insufficiency of stock accrued in February 1953 or prior thereto. This contention is based upon defendants' own interpretation of when the various causes of action are alleged to have accrued and when the acts or omissions upon which they are based were committed. This view disregards the allegations of the complaint. The pleading specifically alleges that the plaintiffs complain "of such wrongs as hereinafter alleged occurred after January, 1955." Only Lamer, owning 100 shares, became a stockholder after that date—in November

1955. The causes of action charging wrongful conduct, however, are not limited to the year 1955 but were continuing in nature.[8] For example, the fourth cause of action alleges that the wrongful acts and conduct of the defendants which resulted in preventing the corporation from qualifying as a registered investment company, compelled tax payments which would otherwise have been available for distribution to stockholders in 1955, 1956, 1957, 1958 and 1959. It also appears that the acts complained of in the sixth and seventh causes of action continued through and beyond the year 1955. Similarly, the tenth cause of action charges wrongful conduct in the years 1956, 1957 and 1958.

■ A different situation exists with respect to the third cause of action which is confined to acts antecedent to Lamer's ownership of stock. The allegations charge depression of the market price of shares of the company between January 1955 and July 1, 1955. In this circumstance, absent other considerations, defendants' position would have to be upheld. But the claim asserted here is federally created, based upon a claimed violation of the Securities and Exchange Act of 1934 and not upon common law or any state statute. Accordingly, the allegations of diverse citizenship may, with respect to that cause of action, be disregarded and section 61-b of the New York General Corporation Law is inapplicable.[9]

For the foregoing reasons, the defendants' motion is denied.

Settle order on notice.

8. Since plaintiffs did own stock at the time of the wrongs alleged it is not necessary to consider whether Federal Rule 23(b) or section 61 of the New York General Corporation Law applies. See, e. g., Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 556, 69 S.Ct. 1221, 93 L.Ed. 1528; Bauer v. Servel, Inc., D.C.S.D.N.Y.1958, 168 F.Supp. 478; Kaufman v. Wolfson, D.C.S.D.N.Y.1955, 136 F.Supp. 939; Piccard v. Sperry Corp., D.C.S.D.N.Y., 36 F.Supp. 1006, affirmed without opinion, 2 Cir., 1941, 120 F.2d 328. Neither is it necessary to decide under section 61-b of the New York General Corporation Law whether the stock ownership of all the plaintiffs need apply to all causes of action, a point upon which the New York Courts seem to disagree. Compare Perry v. Shahmoon Industries, Inc., Sup.Ct.Spec.T., 11 Misc.2d 137, 172 N.Y.S.2d 245, affirmed without opinion, 6 A.D.2d 1010, 178 N.Y.S.2d 612, leave to appeal denied, 1st Dept. 1958, 7 A.D.2d 634, 179 N.Y.S.2d 846, with Richman v. Felmus, 2d Dept. 1959, 8 A.D.2d 985, 190 N.Y.S.2d 920.

9. Fielding v. Allen, 2 Cir., 181 F.2d 163, certiorari denied, 1950, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600.