**Marjorie L. EVERETT, Plaintiff,**

v.

**TRANSNATION DEVELOPMENT CORPO-RATION, a corporation of the State of Delaware, Defendant.**

Court of Chancery of Delaware, New Castle.

May 21, 1970.

James M. Tunnell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Joseph A. Rosenthal, of Cohen, Morris & Rosenthal, Wilmington, for defendant.

MARVEL, Vice Chancellor:

Mrs. Everett, the plaintiff herein, was elected to the office of director of Transnation·Development Corporation following its incorporation in Delaware on June 13, 1969 and served until her removal as such officer on April 10, 1970. She is also the beneficial owner of 16,100 shares of Transnation's common stock. For years prior to the formation of Transnation she had served as a director of Chicago Thoroughbred Enterprises, Inc., now an almost wholly-owned subsidiary of defendant's.

Transnation, in turn, is a subsidiary of a large corporate enterprise known as Gulf & Western Industries, which, together with Gulf & Western Realty Corporation, controls 42.8% of Transnation's stock. The latter's principal business is the ownership and operation through its subsidiary, Chicago, of thoroughbred race tracks at Arlington Park and Washington Park as well as a hotel named the Arlington Park Towers, all of which properties are located in the Chicago area. Shares of Transnation are traded publicly on the Pacific Coast Stock Exchange.

On March 10, 1970, Mrs. Everett, acting under the provisions of 8 Del.C. § 220 and seeking to inspect and make copies of defendant's books and records, namely the minutes of meetings of the boards of directors and of the executive committees of Transnation and Chicago, the certificates of incorporation and by-laws of both corporations, their financial statements, books and records of account, as well as all documents concerned with the organization of Transnation and those having to do with the issuance of securities of such corporation, made a written demand to such effect upon Transnation.

The stated purpose of such demand was, (1) to enable plaintiff as owner of Transnation's common shares to establish the

value of her stock, and (2) to enable her as a purported director to satisfy her duties to preserve and protect Transnation and Chicago. This dual demand was in effect initially turned down by Transnation, which merely referred her to financial information to be found in a form being prepared by it at the time for submission to the Securities and Exchange Commission.

On March 29, 1970, plaintiff made a similar demand, again as both a stockholder and director, and on March 30, 1970, her demand was unanimously approved at a meeting of the board of directors of Transnation at which plaintiff was present. However, on March 31, 1970, when her attorneys went to Transnation's New York office and requested leave to inspect books and records, they were first denied access but later promised a letter on the matter, which, when received, permitted inspection of a limited number of record items. Since Transnation's March 31, 1970 letter failed, in plaintiff's opinion, to comply with her demand, this suit was filed.

On April 10, 1970, following the institution of this suit, action was taken under the terms of Article III, Section 4 of Transnation's by-laws, to remove Mrs. Everett as a director of Transnation. Such by-law provision, which had been first adopted by Transnation's incorporators and thereafter adopted by its board of directors, which at the time included the plaintiff, provides as follows:

"Directors may be removed, with cause, by a majority of the Board of Directors and may be removed by the holders of a majority of the stock, with or without cause, at a meeting, duly called, at which a quorum is present and acting or by written consent, in lieu of meeting, of a majority of the stock having voting power."

Mrs. Everett's removal as a director was accomplished by means of written consent of three stockholders, Philip J. Levin, Janice H. Levin, his wife, and Gulf & Western Realty Corporation, holding a majority of defendant's stock. See 8 Del.C. § 228.

■ It is defendant's contention that the April 10 removal of Mrs. Everett from defendant's board of directors was made in full compliance with Delaware law and that it is entitled to summary judgment of dismissal of Mrs. Everett's claim as a director since she no longer holds such office. Defendant also alleges that plaintiff's action as a stockholder fails to state a claim on which relief can be granted since allegedly there has been no refusal as required by statute as a prerequisite to suit, inasmuch as she has already allegedly received all the information having to do with the value of Transnation's stock to which she is entitled.

Plaintiff does not question the validity of the by-law under which Mrs. Everett was removed as a director but rather contends that her removal was invalid in that a formally permissible corporate act has been taken which in fact constitutes a breach of fiduciary duty on the part of those in corporate control. Compare Bennett v. Breuil, 34 Del.Ch. 6, 99 A.2d 236; Bennett v. Propp, 41 Del.Ch. 14, 187 A.2d 405, and David J. Greene & Co. v. Dunhill Int'l, Inc. (Del.Ch.) 249 A.2d 427.

At the time of plaintiff's election to the board of Transnation the Delaware statute having to do with the terms of directors provided as follows:

"Each director shall hold office until his successor is elected and qualified or until his earlier resignation or removal * * *".

8 Del.C. § 141, as amended by Chapter 50, Laws of Delaware, 1967, § 141(b).

In the case of Essential Enterprises Corp. v. Automatic Steel, 39 Del.Ch. 93,

159 A.2d 288, former Chancellor Seitz refused to countenance the removal of directors elected for full terms of three years under the provisions of the then governing statute and the corporate charter in issue notwithstanding the existence of a by-law which purportedly permitted such removal by a majority of the stockholders with or without cause. The statute having since been amended and having thus been made consistent with defendant's by-law, I am of the opinion that plaintiff, having no vested right in her office, has been properly removed as a director of defendant inasmuch as such by-law was adopted by defendant's incorporators on June 16, 1969, and approved by defendant's directors, including plaintiff, on June 17, she is in no position to attack its application to her. Compare Re Singer, 189 Misc. 150, 70 N.Y.S.2d 550, aff'd 273 App.Div. 755, 75 N.Y.S.2d 514, and see 19 Am.Jur.2d, Corporations, § 1108. In other words, any right which plaintiff may have held in the office of director of Transnation was acquired with the actual or implied knowledge that such right could be extinguished by the vote or consent of the holders of a majority of defendant's common stock. Thus, no vested interest has been disturbed, and the cases cited by plaintiff in opposition to defendant's motion are inapposite. Finally, this is not a suit by a subsequently deposed director brought on behalf of his corporation, Tenney v. Rosenthal, 6 N.Y.2d 204, 189 N.Y.S.2d 158, 160 N.E.2d 463.

■ Defendant's motion for summary judgment of dismissal of plaintiff's complaint as made in her capacity as a director of Transnation is granted. However, because there are material facts in dispute concerning plaintiff's demand to inspect defendant's books and records made in her capacity as a stockholder, defendant's motion to dismiss for failure to state a claim will be denied.

Order on notice.