Filed 4/15/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARGARET SUMMERS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARTINE COLETTE et al.,<br><br>    Defendants and Respondents. | B285488<br><br>(Los Angeles County<br>Super. Ct. No. BC645927) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Reversed and remanded with directions.

Norton Rose Fulbright US, Jeffrey B. Margulies and Andy Guo for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Tania M. Ibanez, Senior Assistant Attorney General, and James M. Toma, Deputy Attorney General, as Amicus Curiae on behalf of Plaintiff and Appellant.

Borton Petrini, Rosemarie Lewis and Jeffrey Z. Liu for Defendant and Respondent Martine Colette.

Freeman, Freeman & Smiley and Dawn B. Eyerly for Defendant and Respondent Wildlife Waystation.

# INTRODUCTION

While serving as a director of a nonprofit public benefit corporation called Wildlife Waystation, Margaret Summers filed this action against the Waystation and another director, Martine Colette, alleging self-dealing and other misconduct by Colette. Colette and the Waystation demurred to the complaint, arguing Summers, who as a director had standing to bring this action when she filed it, lost standing when the Waystation board of directors later removed her as a director. The trial court sustained the demurrers without leave to amend.

We conclude that Summers did not lose standing to maintain this action when the Waystation removed her as a director and that the trial court erred in not granting Summers leave to amend to add the Attorney General as an indispensable party. Therefore, we reverse and remand with directions to overrule the demurrers based on lack of standing and allow Summers to add the Attorney General as a party to this action.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *After Summers Files This Action, the Waystation Removes Her as a Director*

Summers filed this action against Colette and the Waystation to assert "claims . . . as a director on behalf of the . . . Waystation." Summers alleged that, while serving on the Waystation's board of directors, she learned Colette, a director who "treated the Waystation as her own personal fiefdom,"[1] had

_____

[1] According to the complaint, Colette founded the Waystation in 1976 with a "mission . . . to rescue and provide sanctuary for

engaged in numerous acts of self-dealing and breaches of fiduciary duty. Summers alleged that, after she confronted Colette about this misconduct, Colette orchestrated a vote to remove Summers from the board of directors, but that the vote was unlawful.[2] Summers alleged causes of action for "breach of fiduciary duty (self-dealing)," "breach of fiduciary duty (due care)," breach of charitable trust, wrongful removal, unjust enrichment, declaratory relief, and conversion. She sought damages on behalf of the Waystation caused by Colette's misconduct, removal of Colette as a director, a declaration Summers was a director, and a temporary restraining order and preliminary injunction enjoining the Waystation from removing her as a director.

After issuing a temporary restraining order, the trial court issued a preliminary injunction enjoining Colette and the Waystation from conducting further board meetings without providing notice to Summers and allowing her to participate as a

---

all kinds of wildlife and to educate and inform the public about these animals. The Waystation receives no government funding, and is instead supported by private donations, grants, bequests, memberships and sponsorships, using the reputation it has built worldwide in support of its charitable purposes."

[2] Summers alleged: "At this point, the Waystation board consisted of four voting directors. During the vote, Colette and another director voted for [Summers's] removal, while [Summers] voted against removal and a fourth director abstained. . . . California law and the Waystation bylaws state that an involuntary removal of a director without cause requires a majority of directors then in office. Because only two of four directors voted for removal, Colette's attempt to remove [Summers] from the Board was unsuccessful."

director.  At a subsequent Waystation board meeting of which Summers had proper notice and at which she participated, the board again voted to remove Summers as a director.  Conceding her cause of action for wrongful removal was "now[ ] unnecessary," Summers filed a first amended complaint without that cause of action.  She also added a cause of action for an accounting and alleged she brought the "claims in this action as a director at the time of the filing of [the] original complaint on behalf of the . . . Waystation."

B.    *The Trial Court Sustains Demurrers by the Waystation and Colette*

The Waystation demurred to all causes of action in the first amended complaint on the ground Summers "is not the real party in interest and therefore lacks standing to sue."  The Waystation also demurred to the cause of action for breach of fiduciary duty by self-dealing on the grounds Summers had failed to join the Attorney General as an indispensable party and to allege she notified the Attorney General of the action before filing it.  The Waystation similarly demurred to the cause of action for breach of charitable trust on the ground Summers did not give the Attorney General notice of the action.  Colette demurred to the entire complaint on the ground Summers had "no standing to bring this action" because she was not a director or a member of the Waystation.

In opposing the demurrers, Summers argued three statutes gave her standing to bring this action: Corporations Code section 5233, subdivision (c),[3] which provides that a director of a

[3]    Undesignated statutory references are to the Corporations Code.

4

nonprofit corporation may "bring an action" to address self-dealing by another director; section 5142, subdivision (a), which provides that a director of a nonprofit corporation may "bring an action to . . . remedy a breach of a charitable trust"; and section 5223, subdivision (a), which authorizes the superior court, "at the suit of a director" of a nonprofit corporation, to remove another director for, among other things, fraud, dishonesty, or gross abuse of authority.  Summers contended that, because she was a director when she filed the action, she continued to have standing under these statutes.  She argued that allowing the Waystation and Colette to deprive her of standing by removing her after she filed this action would "render[ ] the statute[s] meaningless" and would be "contrary to public policy."

Regarding the Waystation's arguments about her failure to notify the Attorney General, Summers contended she did not have to allege such notification or notify the Attorney General before filing the complaint.  She also submitted evidence she notified the Attorney General of the action in writing shortly after filing the complaint.  Summers conceded her cause of action for self-dealing required her to join the Attorney General as an indispensable party, and she requested leave to amend to do so.[4] She also requested that, in the event the trial court sustained the demurrer for failure to notify or join the Attorney General, the court grant her leave to amend to cure those defects.

The trial court sustained the demurrers without leave to amend.  The court ruled "Code of Civil Procedure Section 367 provides that cases must be prosecuted by real parties in interest.

---

[4]     Summers had proposed a stipulation to amend her complaint to join the Attorney General, but Colette refused to agree.

5

[Summers], whatever her standing or interest at the outset of this case, no longer has any standing or interest, and the current Board of Directors and officers, the present 'real parties in interest,' have no interest in pursuing the action."  The court also ruled section 5233, subdivision (c), required the Attorney General "to be joined and notified . . . before the Complaint was filed, something that could not be cured retroactively."  The court denied Summer's request for leave to amend to cure defects regarding joining or notifying the Attorney General on the ground Summers no longer had "the status required to file anything."  The court entered judgment dismissing the action with prejudice, and Summers timely appealed.

## DISCUSSION

Summers argues the trial court erred in sustaining the demurrers.  She contends that she continues to have standing under the statutes that authorized her to bring the action and that the trial court misapplied the statutory requirements for notifying the Attorney General of the action.  She also contends the trial court abused its discretion in denying her leave to amend to join the Attorney General as an indispensable party.  All three contentions have merit.

A.    *Standards of Review*
""""On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.'"  [Citation.]  In reviewing the complaint, "we must assume the truth of all facts

6

properly pleaded by the plaintiffs, as well as those that are judicially noticeable." [Citation.] We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling.'" (*Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1174; see *Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549.)

"When a trial court sustains a demurrer without leave to amend, 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. The plaintiff has the burden of proving that an amendment would cure the defect.'" (*Modisette v. Apple Inc.* (2018) 30 Cal.App.5th 136, 155; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

B.      *Summers Has Standing To Pursue This Action*

"Only a real party in interest has standing to prosecute an action, except as otherwise provided by statute." (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 208; see Code Civ. Proc., § 367 ["[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute"]; *Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525 (*Turner*) [same].) Summers concedes she is not a real party in interest. (See *Turner*, at p. 525 [a real party in interest has "'"an actual and substantial interest in the subject matter of the action,' and stands to be 'benefited or injured' by a judgment in the action"'"].) As in the trial court, however, she cites three statutes she contends give her standing.

7

First, section 5233, subdivisions (c) and (h), provides that the Attorney General or, if the Attorney General is joined as an indispensable party, a director of a nonprofit corporation "may bring an action" to remedy impermissible self-dealing by another director. Second, section 5142, subdivision (a)(3), provides that a director of a nonprofit corporation "may bring an action to enjoin, correct, obtain damages for or to otherwise remedy a breach of a charitable trust." Finally, section 5223, subdivision (a), authorizes the superior court, "at the suit of a director" of a nonprofit corporation, to remove another director for, among other things, fraudulent or dishonest acts, gross abuse of authority, or breach of duty.

The parties do not dispute that these statutes give a director standing to institute an action such as this one. They dispute whether, under these statutes, removing a director who has instituted the action deprives the director of standing to continue to pursue it. The parties refer to this as a question whether these statutes impose a "continuous directorship" requirement. Colette and the Waystation interpret the statutes as containing that requirement, Summers interprets them otherwise, and no California case appears to have addressed the issue. Summers, however, has the better argument.

""When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow

8

its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'"'" (*Hassell v. Bird* (2018) 5 Cal.5th 522, 540; accord, *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

> 1. *The Statutory Language*

Considered in isolation, the plain language of the three statutes is inconclusive. The statutes provide a director "may bring" the action, but they do not say whether, having brought the action, the plaintiff must continue to be a director to continue to have standing. The Legislature, however, enacted section 5223, section 5142, and former section 5233 (which is identical in all relevant respects to the current version of section 5233) in 1978 as part of a new statutory scheme governing nonprofit corporations. (Stats. 1978, ch. 567, § 5, pp. 1755, 1762, 1764-1766; see Assem. Select Com. on the Revision of the Nonprofit Corp. Code, Summary of AB 2180 and AB 2181, July 27, 1978, at p. 1.) And considered in the context of that statutory framework, the statutory language at issue suggests there is no continuous directorship requirement.

In particular, Summers cites section 5710, which the Legislature enacted as part of that same framework (Stats. 1978, ch. 567, § 5, p. 1787) and which concerns actions brought on

9

behalf of nonprofit corporations by members, as opposed to directors.  Section 5710 provides that "[n]o action may be instituted *or maintained* in the right of any corporation by any member" unless the plaintiff alleges, among other things, he or she "was a member at the time of the transaction or any part thereof of which plaintiff complains."  (§ 5710, subd. (b), italics added.)  Summers notes this language is identical to the language in section 800 concerning the standing of a shareholder to bring an action on behalf of a private corporation, which the Supreme Court in *Grosset v. Wenaas* (2008) 42 Cal.4th 1100 (*Grosset*) interpreted as imposing a "continuous stock ownership" requirement for standing to pursue a shareholder derivative action.  (*Id.* at pp. 1107, 1113-1114.)

In *Grosset*, *supra*, 42 Cal.4th 1100 the Supreme Court considered whether section 800, which "imposes stock ownership requirements for standing to pursue a shareholder's derivative suit," requires "a plaintiff to maintain continuous stock ownership throughout the litigation."  (*Grosset*, at pp. 1107, 1110.)  Section 800, subdivision (b), provides:  "No action may be instituted or maintained in right of any . . . corporation by any holder of shares" unless, among things, the plaintiff alleges he or she was a shareholder at the time of the transaction of which he or she complains.  The Supreme Court observed that "[t]he phrase 'instituted *or maintained*' [italics in original] . . . seems to imply that only a shareholder may initiate or maintain a derivative action."[5]  (*Grosset*, at p. 1111.)  After further reviewing

---

[5]     The Supreme Court in *Grosset* rejected the interpretation of section 800, subdivision (b), adopted by the court in *Gaillard v. Natomas Co.* (1985) 173 Cal.App.3d 410, which held that the statute required "only contemporaneous ownership and

the language and history of the statute, the Supreme Court concluded that, "while section 800(b) seems to point to a continuous ownership requirement, the 'instituted or maintained' language does not clearly impose it. Nonetheless, other considerations ultimately support this interpretation of the statute." (*Grosset*, at pp. 1113-1114.) Those "other considerations" included that a continuous ownership requirement furthered "the statutory purpose to minimize abuse of the derivative suit" and that a "majority of other jurisdictions that have considered the issue require continuous stock ownership for standing to maintain a derivative lawsuit." (*Id.* at p. 1114.)

Significantly, the "instituted or maintained" language that the Supreme Court concluded suggested a continuous stock ownership requirement in section 800, and which appears in the provision concerning a member's standing to bring an action on behalf of a nonprofit corporation in section 5710, does not appear in the provision governing a director's standing to bring an action on behalf of a nonprofit in sections 5233 and 5142. That difference in language suggests a difference in legislative intent. (See *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 463 ["'"[w]hen the

---

ownership at the time the action is filed" and that "the term 'maintained' was intended to 'allow one who, by operation of law, becomes an owner of shares which already are the basis of a derivative action, to continue that litigation.'" (*Grosset*, *supra*, 42 Cal.4th at pp. 1112-1113.) Regarding the latter interpretation, the Supreme Court stated that "nothing in the statutory language or history purports to limit . . . application [of the 'instituted or maintained' language] to that singular circumstance." (*Id.* at p. 1113.)

11

Legislature uses materially different language in statutory provisions addressing the same subject or related subjects, the normal inference is that the Legislature intended a difference in meaning"'"]; *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 342 [same]; *CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1049 ["'[c]ourts should generally "assume that the Legislature knew what it was saying and meant what it said,"'" and "'this is particularly true where the Legislature has omitted a provision which it has employed in other circumstances where the asserted effect is intended'"].)[6] In particular, the absence of something comparable to the phrase "or maintained" in sections 5233 and 5142 points away from a continuous directorship requirement in the same way that

---

[6]     Indeed, summarizing the format of the new proposed law governing nonprofit corporations, the Chair of the Assembly Select Committee that helped draft it reported that (a) the proposed legislation followed the format and language of the General Corporation Law (GCL) (which included the "instituted or maintained" language of section 800), "except where substantive differences require a different format or language"; (b) "individual sections employ the GCL language whenever the same substantive results are intended"; and (c) "[k]eeping the language the same allows those using the proposed law to benefit from judicial interpretations of the GCL."  (Assem. Select Com. on the Revision of the Nonprofit Corp. Code, Summary of AB 2180 and AB 2181, July 27, 1978, at pp. 1-2; see Stats. 1975, Ch. 682, § 7, at pp. 1516, 1570; see *Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1401 ["[i]n construing a statute, legislative committee reports, bill reports, and other legislative records are appropriate sources from which legislative intent may be ascertained"].)

phrase's presence in section 800 "point[s] to" (*Grosset, supra*, 42 Cal.4th at p. 1113) a continuous stock ownership requirement.

### 2. *Statutory Purpose and Public Policy*

Considerations of statutory purpose and public policy also favor Summers's interpretation. *Holt v. College of Osteopathic Physicians and Surgeons* (1964) 61 Cal.2d 750 (*Holt*) is instructive. That case concerned whether trustees of a charitable corporation (i.e., the members of its governing board) had standing to bring an action against other trustees for breach of charitable trust.[7] (*Holt*, at pp. 752-753, 756.) The applicable sections of the Corporations Code stated "'the Attorney General shall institute . . . the proceedings necessary to correct'" any failure to comply with a charitable trust, which the defendants contended meant only the Attorney General could bring such an action. (*Holt*, at pp. 753-754.) Observing "[n]othing in these sections suggests that trustees are precluded from bringing an action to enforce the trust," however, the Supreme Court held the trustees had standing to bring the action. (*Id.* at pp. 754, 757.)

Central to the Supreme Court's holding in *Holt* were the statutory purpose and public policy served by permitting trustees to sue. The Supreme Court stated that the statutes authorizing the Attorney General to sue "were enacted in recognition of the problem of providing adequate supervision and enforcement of charitable trusts. Beneficiaries of a charitable trust, unlike beneficiaries of a private trust, are ordinarily indefinite and

---

[7] The Legislature has since redesignated charitable corporations as either nonprofit public benefit corporations or nonprofit religious corporations, depending on their purpose. (See § 10200.)

therefore unable to enforce the trust in their own behalf. [Citations.]  Since there is usually no one willing to assume the burdens of a legal action, or who could properly represent the interests of the trust or the public, the Attorney General has been empowered to oversee charities as the representative of the public." (*Holt*, *supra*, 61 Cal.2d at p. 754, fn. omitted; see Gov. Code, § 12598, subd. (a) [the Attorney General has the "primary responsibility for supervising charitable trusts in California [and] . . . for protection of assets held by charitable trusts and public benefit corporations"].)  Allowing trustees to sue furthered this end because "[t]he Attorney General may not be in a position to become aware of wrongful conduct or to be sufficiently familiar with the situation to appreciate its impact, and the various responsibilities of his office may also tend to make it burdensome for him to institute legal actions except in situations of serious public detriment." (*Holt*, at p. 755.)  The Supreme Court stated:  "Although the Attorney General has primary responsibility for the enforcement of charitable trusts, the need for adequate enforcement is not wholly fulfilled by the authority given him. . . .  There is no rule or policy against supplementing the Attorney General's power of enforcement by allowing other responsible individuals to sue in behalf of the charity.  The administration of charitable trusts stands only to benefit if in addition to the Attorney General other suitable means of enforcement are available." (*Id.* at pp. 755-756, fn. omitted.)

The same principles weigh against reading into the statutes at issue here a continuous directorship requirement that would unnecessarily deprive the Attorney General and the public of the assistance of "responsible individuals" wishing to pursue

14

an action under those statutes.  (*Holt*, *supra*, 61 Cal.2d at p. 755.)
As the Supreme Court observed in *Holt*, a "'charity's own
representative has at least as much interest in preserving the
charitable funds as does the Attorney General who represents the
general public.'"  (*Id.* at p. 756.)  Such an individual "'is also in
the best position to learn about breaches of trust and to bring the
relevant facts to a court's attention.'"  (*Ibid.*)  A director who files
an action such as this one will continue to provide the advantages
identified in *Holt* even if later removed from office.

Nor does Summers's interpretation offend the purpose of
having a standing requirement.  The purpose of the requirement
"is to 'protect a defendant from harassment from other claimants
on the same demand.'"  (*The Rossdale Group, LLC v. Walton*
(2017) 12 Cal.App.5th 936, 944; accord, *Doe v. Lincoln Unified
School Dist.* (2010) 188 Cal.App.4th 758, 765.)  As the Supreme
Court observed in *Holt*:  "The protection of charities from
harassing litigation does not require that only the Attorney
General be permitted to bring legal actions in their behalf.  This
consideration '. . . is quite inapplicable to enforcement by the
fiduciaries who are both few in number and charged with the
duty of managing the charity's affairs.'"  (*Holt*, *supra*, 61 Cal.2d
at p. 755.)  Similarly, directors authorized to bring an action on
behalf of a nonprofit corporation have been charged with
managing the corporation's affairs, and those permitted to
maintain an action in the absence of a continuous directorship
requirement are sufficiently "few in number."  (*Ibid*; accord, *L.B.
Research & Education Foundation v. UCLA Foundation* (2005)
130 Cal.App.4th 171, 181.)

15

### 3. *Other Jurisdictions*

Cases from other jurisdictions have decided against reading a continuous directorship requirement into statutes authorizing directors to bring actions on behalf of corporations. (See *Grosset*, *supra*, 42 Cal.4th at pp. 1114-1115 [citing "other jurisdictions that have considered the issue" whether standing to maintain a derivative action requires continuous stock ownership in determining section 800, subdivision (b), "is properly construed as containing" that requirement]; *Rappaport v. Gelfand* (2011) 197 Cal.App.4th 1213, 1227 ["[r]eview of section 16701, subdivision (b), and the interpretation of the term 'liquidation value' are issues of first impression in this state," and "[a]s there are no California cases interpreting section 16701, subdivision (b), we may look to other jurisdictions for guidance"].)

*Workman v. Verde Wellness Center, Inc.* (Ariz. Ct. App. 2016) 240 Ariz. 597 (*Workman*) and *Tenney v. Rosenthal* (1959) 6 N.Y.2d 204 (*Tenney*) both concerned whether, under a statute authorizing a director to bring an action on behalf of a corporation to remedy malfeasance by another director, the plaintiff lost standing to pursue the action if, after filing it, he or she was removed as a director. (*Workman*, at pp. 603-605; *Tenney*, at pp. 207-213.) In each case the court, faced with a statute's silence on the continuous directorship requirement, refused to read one into it. (*Workman*, at p. 604; *Tenney*, at pp. 209-210.) Both courts cited policy considerations (*Workman*, at p. 604; *Tenney*, at p. 210), with the court in *Tenney* explaining: "Strong reasons of policy dictate that, once he properly initiates an action on behalf of the corporation to vindicate its rights, a director should be privileged to see it through to conclusion. Other directors, themselves charged with fraud, misconduct or

16

neglect, should not have the power to terminate the suit by effecting the ouster of the director-plaintiff. It is no answer to say that, if wrongs were committed, others are available to commence a new and appropriate action." (*Tenney*, at p. 210; see *Workman*, at pp. 604-605 ["it is reasonable to infer that the board removed [the plaintiff] in response to her claims, particularly in light of the allegations of wrongdoing she made against the other directors"].)

The Waystation attempts to distinguish these cases on the ground that the standing requirement in Arizona and New York is a waivable rule of judicial restraint, whereas in California standing is "jurisdictional and non-waivable." (Italics omitted.) But neither *Workman, supra*, 240 Ariz. 597 nor *Tenney, supra*, 6 N.Y.2d 204 relied on waiver of its jurisdiction's standing requirement. Rather, in each case the court considered the relevant statutory language and public policy to determine what the standing requirement was. The reasoning in those decisions is persuasive and applicable here. (Cf. *Grosset, supra*, 42 Cal.4th at pp. 1114-1115 [that other jurisdictions "require continuous ownership, despite having legislation that fails to expressly provide for it, confirms our view that the requirement is sound"].)

### 4. *Inapplicable Cases Cited by Colette and the Waystation*

The cases Colette and the Waystation cite to support their argument for a continuous directorship requirement are distinguishable. For example, they cite *Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903 (*Wolf*), which held that a director who sued to inspect corporate records lost standing to continue to assert the right to inspect the records when, after filing the action, he

17

was removed as a director.  (*Id.* at pp. 907-908.)  But the court in *Wolf* emphasized that the "narrow" issue before it involved the proper application of section 1602, which provides "[e]very director shall have the absolute right . . . to inspect" a corporation's records.  Because the court's decision turned on its analysis of a director's right of inspection (*Wolf,* at pp. 908, 915-919), the decision offers little assistance in interpreting the statutes at issue here.

The Waystation also quotes the statement in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 that, "[f]or a lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed."  (*Id.* at pp. 232-233.)  This correctly states the law, but it does not help answer the question whether, in fact, Summers continues to have standing.

In sum, Summers had standing under sections 5233, 5142, and 5223 at the time she instituted this action, and her subsequent removal as director did not deprive her of standing.  In the absence of contrary legislative direction, we decline to read into these statutes a continuous directorship requirement.  Therefore, we reverse the trial court's order sustaining the demurrers to Summers's first amended complaint based on lack of standing.

    C.    *The Trial Court Erred in Sustaining the Demurrer Without Leave To Amend for Failing To Join the Attorney General as an Indispensable Party and Notify the Attorney General of the Action*

Summers concedes section 5233 required her to join the Attorney General as an indispensable party, but contends the

18

trial court erred in sustaining the Waystation's demurrer without leave to amend and dismissing her action with prejudice on that ground. She is correct. (See Code Civ. Proc., § 389, subds. (a), (b) [if an indispensable party has not been joined, "the court shall order that he be made a party" or, if that person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice"]; *Holt, supra*, 61 Cal.2d at pp. 760-761 [plaintiffs were entitled to leave to amend to join an indispensable party]; *Irwin v. City of Manhattan Beach* (1964) 227 Cal.App.2d 634, 638 ["[a]n action may not be dismissed summarily whenever it appears there are parties whose presence is indispensable, without affording the plaintiff an opportunity to bring them in"].) On remand, the trial court must give Summers an opportunity to amend to join the Attorney General as an indispensable party.

Summers also argues the trial court erred in sustaining the Waystation's demurrer for failure to notify the Attorney General of the action prior to filing it. Summers is correct again. The only relevant statute that requires notice of the action to the Attorney General, section 5142, does not state when the plaintiff must give that notice. (See § 5142, subd. (a) ["[t]he Attorney General shall be given notice of any action brought by [a director] and may intervene"]; Cal. Code Regs., tit. 11, § 999.2(e) [notice to the Attorney General pursuant to section 5142 must include, among other things, "the time, date and place at which the action or proceeding will occur, *or has occurred*," italics added]; cf. § 5233, subd. (e) [an action by a director must be filed within two years of written notice to the Attorney General or, "if no such notice is filed," within three years of the transaction at issue].)

19

There is no question the Attorney General, having filed an amicus brief in support of Summers on appeal, has now received notice of the action.

## DISPOSITION

The judgment is reversed and the matter remanded with directions for the trial court to vacate its order sustaining the demurrers without leave to amend and to enter a new order (1) overruling the demurrers on the grounds of lack of standing and failure to give the Attorney General notice of the action and (2) sustaining the demurrer by the Waystation with leave to amend to add the Attorney General as an indispensable party. The Attorney General's motion for judicial notice is denied as unnecessary to our decision. (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 594, fn. 13.) Summers is to recover her costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.                    STONE, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.