Filed 9/22/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BEHNAM HESHEJIN et al., | B297037 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC693226) |
| RAMI ROSTAMI et al., | |
| Defendants and Respondents. | |

———————————————

APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia G. Nieto, Judge. Affirmed.

Gutierrez, Preciado & House and Calvin House for Plaintiffs and Appellants.

Novian & Novian, Farhad Novian and Andrew B. Goodman for Defendants and Respondents.

———————————————

Behnam Heshejin, Eric Anvari, the Hestfam Family Trust, and trustee David A. Enzmann (plaintiffs) appeal from an order of dismissal entered as to American Investment Group, LLC (AIG), Avalon Cold Storage, LLC (Avalon), and AIG's director and managing member Rami Rostami (collectively, AIG defendants) after the trial court sustained without leave to amend the AIG defendants' demurrer to plaintiffs' second amended complaint. The second amended complaint asserted derivative causes of action on behalf of American Logistics International, LLC (ALI) against AIG for conspiracy to commit fraud, fraud by concealment, breach of fiduciary duty, declaratory relief, conversion, and accounting.

The trial court held plaintiffs lacked standing to assert double derivative claims[1] on behalf of ALI based on their minority ownership interest in ALI's parent company and sole owner, Mazkat Ventures, LP (Mazkat); plaintiffs failed to assert the claims on behalf of ALI in a compulsory cross-complaint (Code Civ. Proc., § 426.30, subd. (a))[2] in *American Investment Group, LLC et al. v. Alireza Mahdavi et al.* (Super. Ct. L.A.

---

[1]     "A 'double derivative' suit has been defined as an action brought by a shareholder of a holding or parent company, on behalf of that corporation, to enforce a cause of action in favor of the subsidiary company.  The shareholder is, in effect, maintaining a derivative action on behalf of the subsidiary, since the holding or parent company has derivative rights to the cause of action possessed by the subsidiary." (*Gaillard v. Natomas Co.* (1985) 173 Cal.App.3d 410, 419, fn. 7, disapproved on another ground by *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1119, fn. 16.)

[2]     All further undesignated statutory references are to the Code of Civil Procedure.

County, 2020, No. BC662347) (*AIG v. Mahdavi*); and plaintiffs failed to state facts sufficient to constitute causes of action against the AIG defendants. Because ALI (or plaintiffs on behalf of ALI) failed to file a compulsory cross-complaint in the *AIG v. Mahdavi* action, we affirm.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Plaintiffs' Second Amended Complaint*

Plaintiffs initiated this action against the AIG defendants and others on February 7, 2018. After the trial court sustained the AIG defendants' demurrer to the first amended complaint with leave to amend, plaintiffs filed the operative second amended complaint on November 1, 2018. The second amended complaint alleged 12 causes of action, six of which were asserted as derivative causes of action on behalf of ALI against AIG for conspiracy to commit fraud (first cause of action); fraud by concealment (second cause of action); breach of fiduciary duty (third cause of action); declaratory relief (fifth cause of action); conversion (sixth cause of action), and accounting (seventh cause of action).[4]

The second amended complaint alleged plaintiffs are limited partners in Mazkat, with a combined ownership interest of about 19.5 percent. Mazkat in turn wholly owns ALI.

---

[3]    We therefore do not reach whether plaintiffs have standing to assert double derivative claims on behalf of ALI by virtue of their minority ownership in Mazkat.

[4]    Plaintiffs also asserted their first, second, fifth, sixth, and seventh derivative causes of action against Rostami. Plaintiffs did not assert any causes of action against Avalon.

American Logistics Advisors, LLC (ALA), is a general partner with a controlling interest in Mazkat. Defendants Ramin Bagherzadeh and Alireza Mahdavi manage and control ALA.[5] The second amended complaint designated ALI and Mazkat as "nominal defendant[s] for jurisdictional purposes, in a derivative capacity" under Corporations Code section 17709.02.

B. *The Joint Venture*[6]

In February 2009 ALI received approval to operate as a regional center within the immigrant investor pilot program, known as EB-5. Between February 2009 and November 2018, ALI received about $25 million in investments from individual immigrants ($500,000 each from 50 EB-5 investors) seeking to obtain residence visas for the United States under the program.

Between 2009 and 2013, Bagherzadeh formed 10 or more limited partnerships or limited liability companies, including American Logistics International Warehousing & Distribution, LLC (ALIWD), in July 2011; American Logistics International Cold Storage, LLC (which later became Avalon), American Logistics International Cold Storage, LP (ALI Cold Storage), and American Logistics International Fulfillment, LLC, in May 2013; and American Logistics International Fulfillment, LP (ALI Fulfillment), in July 2013. ALI is the sole owner and general partner of ALI Cold Storage. Since its creation, Bagherzadeh has managed ALIWD. From May 2013 until February 2015

[5]     The second amended complaint also named as defendants Bagherzadeh, Mahdavi, American Logistics International Warehousing & Distribution, LLC, and others.

[6]     The facts concerning the joint venture are taken from the second amended complaint.

4

Bagherzadeh was also chief executive officer of Avalon's predecessor company, and he was in charge of operations, marketing, and accounting.

In November 2012 Rostami and Bagherzadeh started discussing a joint venture between ALI and AIG for the creation of a cold storage and fulfillment business (joint venture). The facility would be in the name of ALI Cold Storage with a fulfillment facility under the name of ALI Fulfillment. In May 2013 ALI began to sell partnership interests in ALI Cold Storage and ALI Fulfillment to EB-5 investors for the creation of a cold storage business.

On July 30, 2013 Rostami and Bagherzadeh signed a joint venture agreement on behalf of AIG and ALI, respectively.[7] Under the agreement, AIG was to invest $6 million in the joint venture. If ALI Cold Storage and ALI Fulfillment failed to generate enough capital from EB-5 investors, then $4.5 million of AIG's investment would be considered a loan to ALI Cold Storage and ALI Fulfillment. In October 2013 Rostami created an operating agreement for Avalon, designating ALI Cold Storage as Avalon's sole owner.

Between July 2013 and January 2015, Rostami caused AIG to invest more than $6 million in the joint venture. In January 2015 Rostami discovered federal immigration authorities had denied the visa applications of many of the EB-5 investors in ALI and the related companies, jeopardizing the joint venture's success. In response, Rostami (for AIG) and Bagherzadeh (for ALIWD) secretly executed three documents: a unit purchase

[7]     Plaintiffs attached the joint venture agreement and the amended agreement as exhibits to the second amended complaint.

agreement that restructured the joint venture and converted AIG's investment into "equity purchase of shares into [Avalon]," giving AIG a 75 percent ownership interest in Avalon; a second unit purchase agreement under which ALIWD purchased the remaining 25 percent membership interest in Avalon for $2.5 million; and a new operating agreement for Avalon designating AIG and ALIWD as Avalon's only members, in place of ALI Cold Storage.

The second amended complaint alleged these actions were taken by Rostami, Bagherzadeh, AIG, and ALIWD as part of a conspiracy to divest ALI of its partnership interest and rights in the joint venture, and they concealed those efforts from the owners and managers of ALI and Mazkat. Further, Bagherzadeh acted in the interest of AIG, not ALA, Mazkat, or ALI.

C.      *AIG v. Mahdavi*[8]

On May 22, 2017 AIG, Avalon, and American Logistics International Fulfillment, LLC, filed the *AIG v. Mahdavi* action against Mahdavi, ALI, ALIWD, and others, asserting claims in connection with the joint venture. AIG asserted a cause of action against ALI for breach of contract, and Avalon asserted causes of action against Mahdavi, ALI, and the other defendants for unjust enrichment, allocation and contribution, equitable indemnity, and declaratory relief. The complaint alleged Mahdavi induced AIG to invest in the joint venture, ALI breached the terms of the July 2013 joint venture agreement between AIG and ALI and Avalon's October 2013 operating agreement, and Mahdavi used

---

[8]      The facts concerning the *AIG v. Mahdavi* action are taken from the second amended complaint and the judicially noticed complaint and ALI's answer filed in the *AIG v. Mahdavi* action.

6

his position as de facto manager of Avalon to transfer Avalon's assets to himself, ALI, ALIWD, and others.

ALI and Mahdavi, through their attorney, Martin Jacobs, filed an answer on August 1, 2017. Mahdavi did not inform Mazkat or its partners that ALI had been sued. Plaintiffs first learned of the *AIG v. Mahdavi* action on January 22, 2018 from Rostami's deposition testimony in another lawsuit. On January 23 Jacobs filed a motion to be relieved as counsel. The second amended complaint alleged that even if ALI had informed plaintiffs of the *AIG v. Mahdavi* action, because of the alleged misconduct of its managers Bagherzadeh and Mahdavi, plaintiffs could not have convinced Bagherzadeh and Mahdavi to direct ALI to file a cross-complaint and any demand would have been futile.

D.    *Defendants' Demurrer*

The AIG defendants demurred to the first, second, third, fifth, sixth, and seventh causes of action alleged in the second amended complaint, arguing plaintiffs lacked standing to bring derivative claims; plaintiffs' derivative claims were barred by ALI's failure to file a cross-complaint in the *AIG v. Mahdavi* action; and the second amended complaint failed to state facts sufficient to constitute the challenged causes of action. The AIG defendants requested judicial notice of the May 22, 2017 complaint filed in *AIG v. Mahdavi* and ALI's August 1, 2017 answer.

After a hearing, on December 21, 2018 the trial court sustained the AIG defendants' demurrer without leave to amend. The court also granted the AIG defendants' request for judicial notice of the complaint and ALI's answer filed in *AIG v. Mahdavi*

7

action.  In its written ruling, the court found plaintiffs lacked standing to assert double derivative claims on behalf of ALI as minority partners of Mazkat; plaintiffs failed adequately to plead their efforts to secure action from ALI's managers or the reasons for not making that effort; plaintiffs' derivative claims on behalf of ALI were barred by the compulsory cross-complaint rule because ALI filed an answer in the *AIG v. Mahdavi* action; and plaintiffs' derivative causes of action were not adequately pleaded.

Plaintiffs timely appealed.

## DISCUSSION

A.     *Plaintiffs' Appeal Is Timely*

On April 15, 2019 plaintiffs filed a notice of appeal purporting to appeal from the trial court's December 21, 2018 "judgment of dismissal" sustaining the demurrer.  On June 6, 2019 the AIG defendants filed a motion to dismiss the appeal as untimely, arguing plaintiffs filed their appeal more than 60 days after the AIG defendants served plaintiffs with notice of the trial court's December 21, 2018 order sustaining the demurrer.  (See Cal. Rules of Court, rule 8.104(a)(1)(A), (B) [where a party serves the notice of entry of judgment, the notice of appeal must be filed on or before "60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service," unless the superior court clerk had earlier served a notice of entry of judgment].)  In opposition, plaintiffs argued they electronically filed notices of appeal on

February 19, 2019 and March 19, 2019, but both were rejected by the clerk of the superior court due to missing information.

On July 17, 2019 this court denied the AIG defendants' motion to dismiss this appeal as untimely but stated "the appeal will be dismissed as taken from a non-appealable order unless [plaintiffs] provide a signed order of dismissal on or before August 6, 2019." On July 22, 2019 plaintiffs filed an order of dismissal entered that day, dismissing plaintiffs' action as to the AIG defendants with prejudice and ordering that plaintiffs "take nothing as against those defendants."

In their respondents' brief, the AIG defendants argue for dismissal of the appeal, contending the appeal is taken from a nonappealable order because the underlying action is ongoing as to the remaining defendants. Alternatively, the AIG defendants renew their assertion plaintiffs' appeal is untimely because it was filed more than 60 days after the AIG defendants served plaintiffs with a file-stamped order sustaining the demurrer without leave to amend. Neither contention has merit.

As to the AIG defendants' first contention, "it has long been the settled rule that in a case involving multiple parties, a judgment is final and appealable when it leaves no issues to be determined as to one party." (*Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 506; accord, *Justus v. Atchison* (1977) 19 Cal.3d 564, 568 ["the rule requiring dismissal [of an interlocutory appeal] does not apply when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party"], disapproved on another ground by *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171; *Millsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 430.) Thus, the rule that an appeal may not be taken from

9

interlocutory judgment does not apply in this case where the July 22, 2019 signed order of dismissal left no issue to be determined as to the AIG defendants.

As to the AIG defendants' second contention, plaintiffs' April 15, 2019 notice of appeal purported to appeal from the minute order sustaining the demurrer without leave to amend, which was not an appealable order.  But we treat the notice of appeal as a premature but valid appeal from the subsequent order of dismissal, "as filed immediately after entry of judgment."[9]  (Cal. Rules of Court, rule 8.104(d)(2); see *Maxwell v. Dolezal* (2014) 231 Cal.App.4th 93, 96, fn. 1; *In re Social Services Payment Cases* (2008) 166 Cal.App.4th 1249, 1262, fn. 4.)

B.     *Standard of Review*

"In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.  [Citation.]  Where the demurrer was sustained without leave to amend, we consider whether the plaintiff could cure the defect by an amendment." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)  When evaluating the complaint, "we assume the truth of the allegations."  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; accord, *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  "A judgment of dismissal after a

---

[9]     "The order of dismissal, signed by the trial court and entered by the court clerk, constitutes a judgment under . . . section 581d."  (*Moorer v. Noble L.A. Events, Inc.* (2019) 32 Cal.App.5th 736, 741, fn. 3.)

10

demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Summers v. Colette* (2019) 34 Cal.App.5th 361, 367.)

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

"'[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.'" (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [application on demurrer of affirmative defense of statute of limitations based on facts alleged in a complaint is a legal question subject to de novo review]; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224 ["'It must appear clearly and affirmatively that, upon the face of the complaint [and matters of which the court may properly take judicial notice], the right of action is necessarily barred.'"].)

11

C.	*Plaintiffs' Derivative Claims Are Barred by the Compulsory Cross-complaint Rule*

Section 426.30, subdivision (a), provides "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." "Section 426.30 is an affirmative defense that completely disposes of any cause of action to which it applies." (*Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 56; accord, *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1153 ["section 426.30 . . . must be specially pleaded as an affirmative defense"].)

"The compulsory cross-complaint statute is designed to prevent 'piecemeal litigation.'" (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 564; accord, *Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 959 (*Align Technology*).)  As the *Wittenberg* court explained, "'The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the counterclaim statutes [citations] was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction.  [Citation.]  Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion.'" (*Wittenberg*, at p. 564; accord, *Align Technology*, at p. 959.)  The statute is to be liberally construed to advance its purpose.  (*Chao Fu, Inc. v. Chen, supra*, 206 Cal.App.4th at p. 56; accord, *Align Technology*, at p. 959.)

"The related cause of action must be one that was in existence at the time of service of the answer (§ 426.30, subd. (a)); otherwise, the failure to assert it in prior litigation is not a bar under the statute." (*Align Technology, supra*, 179 Cal.App.4th at p. 960.) The phrase "related cause of action" in section 426.30 is defined as "a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c).) "Because of the liberal construction given to the statute to accomplish its purpose of avoiding a multiplicity of actions, 'transaction' is construed broadly; it is 'not confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated [citations].'" (*Align Technology*, at p. 960 [employer's claims against former employee for misappropriation of patents were barred by compulsory cross-complaint rule because employer failed to cross-claim against employee in response to employee's prior cross-complaint for wrongful termination and breach of contract because all claims arose out of employment relationship]; accord, *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 83-84 [construing relatedness requirement of § 426.30, subd. (a), "broadly to effectuate its purpose to avoid a multiplicity of actions," but concluding claims against successor company for breach of contract were not logically related to claims against predecessor company for breaches of fiduciary duty in earlier time period]; see *Saunders v. New Capital for Small Businesses, Inc.* (1964) 231 Cal.App.2d 324, 338 [counterclaim was compulsory because it arose out of same fiduciary relationship between the parties even though they involved different transactions].) "In the breach of

13

contract context, the rule means any claims the defendant has against the plaintiff based on the same contract generally must be asserted in a cross-complaint, even if the claims are unrelated to the specific breach or breaches that underlie the plaintiff's complaint." (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 538.)

Plaintiffs do not dispute the derivative claims[10] they assert on behalf of ALI existed at the time ALI served and filed its answer in *AIG v. Mahdavi*. Nor do plaintiffs dispute their derivative claims relate to the causes of action AIG alleged against ALI in the *AIG v. Mahdavi* complaint, which arose from the same joint venture. Rather, plaintiffs argue section 426.30 does not apply because they were not parties to the prior action. Plaintiffs' argument misreads the statute's text and purpose. ALI is "a party against whom a complaint" was filed in *AIG v.*

---

[10] "Under California law, 'a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf.' [Citations.] A different rule would 'authorize multitudinous litigation and ignore the corporate entity.'" (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312; accord, *Grosset v. Wenaas, supra*, 42 Cal.4th at p. 1108 ["An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.""].) Plaintiffs do not dispute the second amended complaint's first, second, third, fifth, sixth, and seventh cause of action are derivative, not direct claims.

14

*Mahdavi.* (§ 426.30, subd. (a).) Further, ALI "serv[ed] [its] answer to the complaint" but "fail[ed] to allege in a cross-complaint any related cause of action" that ALI then had against AIG. (*Ibid.*) Therefore, ALI may not now assert against AIG the related causes of action not pleaded in the *AIG v. Mahdavi* action.

Because ALI is barred from asserting the related causes of action against AIG in this action, so are plaintiffs.[11] A derivative cause of action belongs to the corporation, and the corporation is the true plaintiff. (*Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1118 (*Beachcomber*) ["The shareholder or member bringing the derivative lawsuit is the plaintiff in name only because the lawsuit seeks redress for injury the company suffered and any recovery belongs to the company. Hence, although the company is named as a nominal defendant based on the insiders' refusal to bring the lawsuit on the company's behalf, the company is the true plaintiff."]; *Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1004 (*Patrick*) ["The corporation must be joined [in a derivative suit] because 'its rights, not those of the nominal plaintiff, are to be litigated . . . .'"]; *McDermott, Will & Emery v. Superior Court* (2000) 83 Cal.App.4th 378, 382 ["A *derivative*

---

[11] Because plaintiffs do not assert any arguments on appeal specific to Rostami, we do not reach whether plaintiffs' claims against Rostami as the managing member of AIG should be treated differently from those asserted against AIG. (See *People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9 ["the claim is omitted from the opening brief and thus waived"]; *Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are deemed waived or abandoned."].)

action . . . does not transfer the cause of action from the corporation to the shareholders.  Rather, the cause of action in a shareholder derivative suit belongs to and remains with the corporation.  Such a lawsuit is derivative, i.e., brought in the 'corporate right,' to recompense the *corporation* for injuries done to it."]; *Scarbourough v. Briggs* (1947) 81 Cal.App.2d 161, 166 (*Scarbourough*) ["The corporation, being the ultimate beneficiary of such a suit, is the real party plaintiff, and the particular stockholders who bring the action are mere nominal parties."].)  Because plaintiffs "'stand in the shoes'" of ALI in seeking redress for ALI's injuries, they are generally subject to the procedural rules that would apply to ALI as plaintiff in a direct action.  (*McDermott, Will & Emery*, at p. 383 ["It is the corporation, and not the shareholder, who is the holder of the [corporation's attorney-client] privilege."].)

Because the right of action belongs to the corporation, not its shareholders or members, it may be forfeited, waived, or adjudicated by the direct actions of the corporation.  *Scarbourough, supra*, 81 Cal.App.2d 161 is instructive.  There, plaintiffs brought a derivative shareholder action on behalf of the corporate entity, Security Home Estates, against individual defendant N.A. Ross, Jr., seeking to declare void the sale of real property.  (*Id.* at pp. 162-164.)  Ross asserted res judicata as an affirmative defense, and following a trial, the trial court entered judgment for Ross based on evidence of a consolidated judgment in two previous actions between Security and Ross adjudicating the validity of the sale of the same real property.  (*Id.* at pp. 162, 164.)  On appeal, plaintiffs contended the previous consolidated judgment was "not res judicata as to them because the parties in the within action are not the same as in the two previous cases."

(*Id.* at p. 166.)  The Court of Appeal rejected the argument, reasoning "[t]he present action is concededly brought by plaintiffs, not individually but as shareholders of Security as a derivative or representative action against Ross, other shareholders and the corporation itself. . . .  [Citations.]  Under such circumstances plaintiffs herein are brought within the rule that shareholders of a corporation are in privity with it and, in the absence of fraud, are bound by all judgments rendered against the corporation."  (*Id.* at p. 166.)[12]

Section 426.30's purpose to "avoid[] a multiplicity of actions" (*Align Technology, supra*, 179 Cal.App.4th at p. 960) is also served by this interpretation.  We are sympathetic to plaintiffs' arguments it is inequitable to find forfeiture where plaintiffs allege they lacked knowledge of the prior suit until after ALI filed its answer and the insiders who controlled ALI would have refused to bring a lawsuit on the company's behalf against themselves.  But it would also be inequitable to AIG to allow plaintiffs to assert claims ALI failed to assert by compulsory cross-complaint in the earlier-filed action, subjecting AIG to the precise "'piecemeal litigation'" section 426.30 was designed to prevent.  (*Wittenberg v. Bornstein, supra*, 51 Cal.App.5th at p. 564.)

Plaintiffs' attempts to distinguish the reasoning of *Patrick, supra*, 167 Cal.App.4th at page 1004 and *Beachcomber, supra*, 13 Cal.App.5th at page 1118 are not persuasive.  In *Patrick*, the Court of Appeal held a nominal defendant corporation may not demur to a derivative action filed on its

---

[12]     Plaintiffs do not allege AIG's failure to file a compulsory cross-complaint in the *AIG v. Mahdavi* action was itself fraudulent.

17

behalf "except on limited grounds such as the shareholder plaintiff's lack of standing" because "the corporation has no ground to challenge the merits of a derivative claim filed on its behalf and from which it stands to benefit." (*Patrick*, at pp. 999, 1005.) In *Beachcomber*, shareholder plaintiffs brought a derivative action on behalf of a nominal defendant corporation against its managers. (*Beachcomber*, at p. 1113.) The trial court disqualified the attorney for the corporation's managers based on a presumption the attorney possessed confidential information obtained during the attorney's representation of the corporation in an earlier action. (*Id.* at p. 1114.) The Court of Appeal granted a petition for writ of mandate and directed the trial court to vacate its disqualification order in light of new authority supplanting application in a derivative action of a presumption the attorney possesses confidential information from prior representation of the corporation, and to determine whether on the facts of the case the attorney could continue to represent the managers. (*Id.* at p. 1124.) Neither case involved the compulsory counter-complaint rule, but both illustrate, rather than undermine, that a derivative action belongs to the corporation, not the shareholder or member. (See *Beachcomber*, at p. 1118; *Patrick*, at p. 1004.)

## DISPOSITION

The judgment is affirmed.  The AIG defendants are to recover their costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


DILLON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.