[No. G040823. Fourth Dist., Div. Three. June 30, 2009.]

STEVEN CHOI et al., Plaintiffs and Appellants, v.
ORANGE COUNTY GREAT PARK CORPORATION, Defendant and
Respondent.

COUNSEL

Enterprise Counsel Group, David A. Robinson, Benjamin P. Pugh and Timothy M. Kowal for Plaintiffs and Appellants.

Nossaman, Robert D. Thornton, Rick E. Rayl and Bradford B. Kuhn for Defendant and Respondent.

OPINION

**RYLAARSDAM, Acting P. J.**—Plaintiffs and appellants Steven Choi and Christina Shea, in their capacities as directors of defendant Orange County Great Park Corporation, appeal an order denying them attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5) and Corporations Code section 6337, claiming the evidence showed they met each of the criteria necessary to recover such fees. We agree they were entitled to attorney fees under section 1021.5 and remand for the trial court to determine the amount.

## FACTS AND PROCEDURAL HISTORY

Defendant is a public benefit nonprofit corporation formed in 2004 to develop the former United States Marine Corps Air Station El Toro property. It will manage over $400 million dollars in connection with development of the Great Park on that property. Defendant's board consists of nine members, the five members of the Irvine City Council and four other at-large directors chosen by the other board members. Plaintiffs are minority members of the board. The three other Irvine City Council members, led by Larry Agran, are the majority in opposition to plaintiffs, and, according to an Orange County Grand Jury report, control defendant.

For the first three years after its formation defendant had three chief executive officers (CEO's), each of whom was an Irvine city employee. After the third CEO, Marty Bryant, resigned in 2007, defendant agreed to conduct a nationwide search for a replacement. Shea and a previous director of defendant, Richard Sim, who had been an executive with the Irvine Company, had recommended such a search since 2005.

Defendant formed a search committee consisting of four of the directors, including Agran but not plaintiffs, and two employees of the City of Irvine. The committee hired a Santa Ana-based recruiting firm, The Mills Group, to conduct a nationwide search. Mills ran advertisements and obtained some names from members of the search committee to find candidates and reported

it received about 150 résumés. Mills narrowed potential candidates to the top 12 and with the search committee interviewed five of them. From those five they proposed one candidate, Kurt Haunfelner, a vice-president of Chicago's Museum of Science and Industry, to be interviewed by the full board. Before the board voted, Shea asked Mills for copies of the résumés of the five candidates but was refused. Defendant offered the position to Haunfelner, but he declined.

Mills then notified Shea that the search committee recommended the second choice candidate, Rod Cooper, the Great Park's then operations manager, be offered the position. Shea asked for a copy of Cooper's résumé and for the full board to interview him but was refused. Cooper withdrew his name from consideration before he was offered the position.

Shortly thereafter a story in the Los Angeles Times revealed that Haunfelner was "a longtime friend" of Agran, and his late brother had been an aide to Agran. This information had not been disclosed to the board prior to the vote offering Haunfelner the position. The same story also reported that the most recent CEO, Bryant, a longtime Irvine city employee, had an 18-year-old conviction for embezzling funds from the City of San Juan Capistrano to purchase cocaine. A subsequent story reported Agran as saying it was not defendant's responsibility to screen the CEO's background but that it should have been done by the Irvine City Manager.

Plaintiffs again asked to see all résumés Mills had obtained during the search process. Defendant refused to provide the documents because, according to Agran, it had the duty to protect the privacy of the candidates and feared plaintiffs might publicly disclose the names. Plaintiffs made at least two additional written demands to inspect the documents, one to which they never received a direct answer and one to which they received no reply. Documents were never provided.

Plaintiffs then filed a petition for writ of mandate under Corporations Code section 6334 and Code of Civil Procedure section 1085 to compel defendant to produce the documents. In response the board voted seven to one to have the search committee keep the identity and résumés of the candidates confidential except for a candidate the search committee recommended be hired. Defendant answered and demurred to the petition, arguing that the City of Irvine was an indispensable party because it owned the documents. Both the demurrer and the petition itself were set for hearing.

The day before the hearing, the parties entered into a stipulation to settle the controversy. Defendant agreed to provide plaintiffs "with complete copies of all materials collected or prepared by [Mills] and/or the . . . [s]earch

[c]ommittee in conjunction with [the] efforts to recruit a new CEO for the Great Park . . . [¶] . . . [¶] . . . at a properly convened closed-session meeting of the Great Park's Board of Directors authorized pursuant to Government Code section 54950[] et seq.[] ([]Brown Act[]) . . . ." The parties also agreed that "all information disclosed at such meeting, including without limitation the identity of the candidates, shall be treated in accordance with the Brown Act." The stipulation also stated defendant would provide plaintiffs with additional documents related to recruitment of the CEO as they were received or created. The City of Irvine was not a party to the stipulation.

Plaintiffs filed a motion to recover attorney fees under section 1021.5 and Corporations Code section 6337. In denying the award the court stated it "[did not] know who [plaintiffs] prevailed over. [They] certainly [have not] prevailed in the traditional sense of a lawsuit . . . [because] there is no judgment. There is nothing of a character that would represent that there was adjudication of the case. I don't think it was adjudicated. It was settled. . . . It was probably a reasonable solution to the problem, but . . . handing out $44,000 for a settlement of this sort just strikes me as being a radical over-interpretation of what the concept of prevailing parties means under the circumstances of this case." The court also described the settlement as "a meeting in a closed door room where a lot of people went through a lot of documents that weren't disclosed to the public" and stated it could not identify any "vast public benefit" resulting from it. It reiterated, "Basically two people went into a room which no one else was allowed to go into and they spent some time doing this and that. That doesn't strike me as a . . . public benefit which can be quantified, publicized." The court did not rule on the argument that fees should be awarded under Corporations Code section 6337.

## DISCUSSION

### 1. *Section 1021.5*

#### a. *Introduction*

Section 1021.5 provides that a prevailing party may recover attorney fees when its action "has resulted in the enforcement of an important right affecting the public interest"; "a significant benefit . . . has been conferred on the general public or a large class of persons"; "the necessity and financial burden of private enforcement . . . make the award appropriate"; and the interest of justice dictates the fees should not be "paid out of the recovery."

"Whether the applicant for attorney fees has proved section 1021.5's elements is a matter primarily vested in the trial court. [Citation.] 'We review

the entire record, attentive to the trial court's stated reasons in denying the fees and to whether it applied the proper standards of law in reaching its decision. [Citation.] We will reverse the trial court's decision only if there has been a prejudicial abuse of discretion, i.e., when there has been a manifest miscarriage of justice or " 'where no reasonable basis for the action is shown.' " ' [Citation.]" (*Wal-Mart Real Estate Business Trust v. City Council of San Marcos* (2005) 132 Cal.App.4th 614, 620 [33 Cal.Rptr.3d 817].) In our review we must determine " 'whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' [Citation.]" (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 512 [94 Cal.Rptr.2d 205].)

Plaintiffs contend the court erred in failing to award them attorney fees under section 1021.5 and we agree. Each of the factors has been satisfied.

### b. *Prevailing Party*

▮ Plaintiffs assert they prevailed because they obtained the result they sought in the petition, access to the documents. They are correct. The stipulation provided plaintiffs would be given "complete copies of all material" used in the selection process and set out a detailed list of those documents, including résumés, correspondence, and documents prepared by Mills in ranking applicants. This satisfied plaintiffs' prayer in the petition for an order compelling defendant to allow plaintiffs to inspect and copy those documents.

Defendant's counter arguments have no merit. Its claim plaintiffs did not achieve their desired result, which it describes as "unfettered access" to the documents, is wrong. Defendant points to nothing in the record showing plaintiffs sought "unfettered access." That the stipulation requires copies be provided in a Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.) closed meeting of the board does not limit plaintiffs' recovery for purposes of this analysis. Plaintiffs never demanded they be given the documents without the confines of the Brown Act. And defendant could have agreed to provide the documents with this provision when plaintiffs first requested them, but instead flatly refused and forced plaintiffs to file the writ petition.

▮ The court's statement it did not know who had prevailed is also unpersuasive. The record plainly shows plaintiffs prevailed. Moreover, the court's conclusion plaintiffs could not have prevailed because there was no

adjudication is not consistent with applicable authority, which provides that a party may prevail even where there is a settlement. "In assessing whether a party is a successful party, a 'broad, pragmatic view' is applied. [Citation.] It is not necessary that the party seeking fees has obtained a final favorable judgment. [Citation.] 'The critical fact is the impact of the action, not the manner of its resolution. If the impact has been the "enforcement of an important right affecting the public interest" and a consequent conferral of a "significant benefit on the general public or a large class of persons" a . . . section 1021.5 award is not barred because the case was won on a preliminary issue [citation] or because it was settled before trial. [Citation.]' [Citation.]" (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 649 [52 Cal.Rptr.3d 1]; see also *Wal-Mart Real Estate Business Trust v. City Council of San Marcos, supra,* 132 Cal.App.4th at p. 621 ["ruling on the 'underlying issue' " unnecessary to be deemed "successful party"].)

Defendant argues we do not have the full record and thus should not "second guess" the trial court's decision. It relies on an ex parte hearing that purportedly provided "substantial information concerning the background of the dispute . . . ." This argument does not withstand scrutiny. First, because we do not have a record of the hearing we cannot validate defendant's description of the information provided. More importantly, it is of no consequence. What matters is what plaintiffs sought and that they achieved it, and that is in the record.

We also reject defendant's attempt to recharacterize this case as a declaratory relief action in which the settlement "protect[ed] both sides' interests" and defendant "obtained what it sought in litigation." We give no credence to its assertion plaintiffs did not prevail because if defendant had filed a declaratory relief action first, it would be the prevailing party. There is absolutely nothing in the record to suggest defendant would have taken any action to resolve this dispute. Defendant's position that necessitated the writ petition was a refusal to turn over any documents to plaintiffs under any circumstances. The fact it finally agreed to do so, albeit under Brown Act terms, was not a win for defendant; it was a complete change of position. Defendant unequivocally refused to provide documents prior to the litigation and opposed the petition. Likewise, its claim that if anyone prevailed it was defendant is spurious.

### c. *Important Right Vindicating a Public Interest Resulting in a Significant Public Benefit*

■ We must also determine whether plaintiffs' action "resulted in the enforcement of an important right affecting the public interest" and conferred

"a significant benefit" on "the general public or a large class of persons" within the meaning of section 1021.5. In assessing whether an action has enforced an important right, "courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 936 [154 Cal.Rptr. 503, 593 P.2d 200], fn. omitted.) As to the benefit, it "may be conceptual or doctrinal and need not be actual and concrete; further, the effectuation of a statutory or constitutional purpose may be sufficient. . . . [¶] The benefit must inure primarily to the public. [Citation.] [¶] Thus, 'the statute directs the judiciary to exercise judgment in attempting to ascertain the "strength" or "societal importance" of the right involved.' [Citation.] An effect upon the public interest is generally considered to require an impact on persons other than those directly involved. [Citation.]" (*Braude v. Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1011 [223 Cal.Rptr. 914].)

Plaintiffs satisfied these factors. As directors, plaintiffs owed a fiduciary duty to defendant's constituents, the residents of Irvine, Orange County, and the greater community the Great Park will serve. That duty included "proper governance" of the board and the selection of a suitable CEO. (See *Hartman v. Hollingsworth* (1967) 255 Cal.App.2d 579, 581–582 [63 Cal.Rptr. 563], superseded by statute on another ground in *Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1184 [283 Cal.Rptr. 135, 812 P.2d 154] [directors' "unqualified right of inspection" assists performance of fiduciary duty].)

Given the checkered history of the CEO search and the ongoing public criticism of the "revolving door of Great Park executives" (Barboza, *Irvine council members question Great Park CEO search*, L.A. Times (Feb. 6, 2008)), the method used for selection of the CEO should be beyond reproach. Plaintiffs' request for documents to determine how the search had been conducted to date was an act to maintain the integrity of the process itself, a significant benefit to the public, protecting its interest.

Additionally, review of the documents would aid plaintiffs in selecting the best possible CEO, not necessarily a person connected to the City of Irvine or one of its political leaders. This is especially important given that out of 150 resumes reportedly collected from within and without the United States the selection committee's first choice had political ties to Agran and the second choice was another City of Irvine employee. This does not give the appearance of fairness or impartiality. Moreover, as plaintiffs note, defendant controls more than $400 million in public funds the CEO will be entrusted to manage.

Seeking the documents also served to enforce plaintiffs' absolute inspection rights as directors of a public benefit corporation, granted to them by

both defendant's bylaws and the Corporations Code. Defendant's bylaws dictate that "[e]very director shall have the absolute right at any reasonable time to inspect the corporation's . . . records[ and] documents of every kind . . . includ[ing] the right to copy and make extracts of documents." Corporations Code section 6334 states: "Every director shall have the absolute right at any reasonable time to inspect and copy all books, records and documents of every kind . . . of the corporation of which such person is a director." Further, the California Constitution provides for "the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. 1, § 3, subd. (b)(1).)

Obtaining access to the documents achieved the policy set out in Corporations Code section 6334, a fundamental legislative goal, which satisfies the requirements of section 1021.5. (*Woodland Hills Residents Assn., Inc. v. City Council, supra*, 23 Cal.3d at pp. 935–936.) And plaintiffs could not fulfill their fiduciary duty to use their best efforts to effectuate a fair and legitimate selection process without seeing the documents.

In finding there was no public benefit, the court characterized the stipulation and order requiring disclosure of the documents as being the same as "any other discovery [order]." It did not see how the public benefited from plaintiffs being able to review the documents and described it as "just a political argument between politicians." And when plaintiffs' lawyers explained that part of the benefit was having plaintiffs, as directors, overseeing the hiring of the CEO, the court asked, "How do we know that the public benefited from that?" It also seemed to believe that there was no public benefit because plaintiffs had not demonstrated that the board majority had hired a "cron[y]" or that without the suit the Great Park would not be built. Defendant concurs there was no benefit because plaintiffs did not "prove that the CEO search was tainted." (Boldface, underscoring, and some capitalization omitted.)

But this analysis is based on the wrong standard. As set out in *Braude v. Automobile Club of Southern Cal., supra*, 178 Cal.App.3d 994, "the benefit may be conceptual or doctrinal and need not be actual and concrete; further, the effectuation of a statutory or constitutional purpose may be sufficient." (*Id.* at p. 1011.) That the dispute may have involved political wrangling does not mean there was no significant public interest. The language of section 1021.5 by its terms encompasses disputes involving political opponents. In addition, plaintiffs did not have to prove the selection process was tainted; they had to use their best efforts to ensure it was not.

Defendant emphasizes that plaintiffs agreed to the process by which selection of the CEO was to be accomplished, including formation of a search committee and hiring Mills. Similarly, it points to all the documents plaintiffs did see prior to their demand and commencement of the litigation, including advertisements, a detailed summary of what Mills and the search committee had done to that point, a summary of the qualifications of the top five candidates, and the résumé of the candidate Mills proposed for the job. It argues that, based on these facts, plaintiffs were able to oversee the search and ensure its legitimacy.

But, as defendant acknowledges, plaintiffs sought documents after the validity of the search process was called into question, first when the search committee recommended only one candidate for consideration, who turned out to have political ties to Agran, and again when the second choice, a City of Irvine employee, withdrew from consideration. Even though plaintiffs originally did agree to the method of selection, that does not mean they relinquished their rights to review documents or could abdicate their continuing responsibility concerning the selection process, especially once there was a serious question of whether the search had been compromised and even though they had been given summaries of the search process to date. And the fact none of the directors had been given copies of the résumés is not relevant. There is no evidence any other director asked to see them and if they had they had the same rights as plaintiffs.

Defendant argues plaintiffs' demands for information were unreasonable and only to further their own political and personal goals, not to ensure a fair selection of the CEO. It maintains that its primary concern was protecting the candidates' confidentiality and justified withholding the documents plaintiffs sought, claiming plaintiffs might have used the candidates as "unwitting pawns in their ongoing argument" with the majority members of the board. It concludes it was "not going to allow [plaintiffs] . . . unfettered access to the candidates' confidential information."

But, although there is evidence some information as to applicants was leaked, there is no evidence plaintiffs were the source. Moreover, defendant presumably had the same concern when it entered into the stipulation to provide the documents and, by limiting access under the requirements of the Brown Act, it was able to protect confidentiality.

d.   *Necessity of Lawsuit*

In addition, filing the action was necessary for plaintiffs to obtain access to the documents. There is not a whit of evidence that defendant would have made the documents available had it not been filed.

### e. *Payment of Fees From Award*

The final factor to be satisfied is that attorney fees should not be paid out of the award to plaintiffs. Here plaintiffs did not seek monetary damages nor were any awarded. Thus there is no settlement out of which plaintiffs could pay the attorney fees. Moreover, as discussed above, given the fact that plaintiffs' personal recovery was minimal if anything, the interests of justice dictate that they be awarded attorney fees.

### f. *Reversal of Order and Remand for Determination of Amount*

As noted above, we are aware of the trial court's discretion to decide whether attorney fees are warranted. However, the trial court's discretion is not unlimited and " 'reversal is appropriate "where no reasonable basis for the action is shown." [Citation.]' [Citations.]" (*Baggett v. Gates* (1982) 32 Cal.3d 128, 143 [185 Cal.Rptr. 232, 649 P.2d 874].) As discussed above, the ruling was based on erroneous beliefs that there had to be an adjudication of the matter and that there had to be a concrete or actual benefit. Thus, we reverse the order.

Plaintiffs request that we remand the matter to the trial court for an adjudication of the amount of fees to be awarded. Defendants' claim to the contrary, that plaintiffs are asking us to award them the full amount of attorney fees they sought, is disingenuous. The trial court does have discretion to decide the amount of fees to be awarded (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321–322 [193 Cal.Rptr. 900, 667 P.2d 704]) and we remand the case for it to make such a determination.

## 2. *Corporations Code Section 6337*

Plaintiffs contend the trial court abused its discretion because it failed to rule on the request for fees under Corporations Code section 6337. By contrast, defendant argues section 6337 applies to the exclusion of section 1021.5 and plaintiffs did not meet its requirements. Because we have determined plaintiffs were entitled to fees under section 1021.5, we need not decide their entitlement under Corporations Code section 6337. Additionally, because plaintiffs demanded the documents not only under Corporations Code section 6334 but also under defendant's bylaws, we need not decide the question of whether Corporations Code section 6337 controls and supplants section 1021.5 when documents are sought under Corporations Code section 6334.

## DISPOSITION

The order is reversed and the case is remanded to the superior court for a determination of the amount of attorney fees to which appellants are entitled under Code of Civil Procedure section 1021.5. Appellants are entitled to costs on appeal.

O'Leary, J., and Ikola, J., concurred.