Filed 6/30/22  Bezis v. Livermore Heritage Guild CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JASON A. BEZIS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LIVERMORE HERITAGE GUILD,<br><br>        Defendant and Respondent. | A160921<br><br>(Alameda County<br>Super. Ct. No. RG18912348) |

In 2018, Jason Bezis filed a petition for writ of mandate seeking (1) reinstatement of his membership in the Livermore Heritage Guild, a California nonprofit corporation (LHG), (2) enforcement of his previous demands for access to the LHG member list and inspection of LHG records, and (3) nullification of the elections and voting on bylaw amendments that occurred after his membership ended.  In 2020, the trial court denied Bezis's petition and subsequent motion for reconsideration.  Bezis now challenges these rulings on appeal.

First, while we agree with Bezis that his July 2017 payment entitled him to a one-year membership pursuant to LHG's then-existing bylaws and LHG terminated that one-year membership, we conclude that the trial court did not err in denying the petition for reinstatement because Bezis lacked a present beneficial interest to be afforded such relief.  Second, we conclude that the trial court did not err in denying the petition for enforcement of

1

Bezis's member list and inspection demands under the doctrine of laches. Third, given there is no evidence that Bezis made any membership payment to LHG within the year prior to its September 22, 2018 meeting, we conclude that the trial court did not err in denying the petition for nullification of the elections and voting at that meeting because Bezis's membership had already lapsed. We affirm.

## BACKGROUND

LHG is a nonprofit public benefit corporation that was formed in 1973 with a mission "to ensure awareness and protection of Livermore's rich heritage through public advocacy and by collecting, preserving, interpreting and sharing historic resources for the education and enjoyment of all." LHG's records indicate that Bezis first became a member of the organization in 2008. His membership over the next eight years was intermittent: he made payments in 2010, 2012, 2014, 2015, and 2016. Bezis was LHG's newsletter editor from 2009 to 2016.

### A. *LHG Bylaws and Standing Rules*

LHG's bylaws approved in 2009 contain an article entitled "**Membership**." Section 1 of the article states: "Membership in the Guild shall be open to any individual, family or organization ascribing to the above Mission and having an interest in promoting its objectives." Section 2 states: "Active members are those members who have paid their dues for the current year." Section 3 affords active members "full voting privileges" at general membership meetings and eligibility to hold any office in LHG, whereas section 4 allows LHG to confer honorary memberships for "outstanding" contributions to LHG or its mission. Section 5 states: "Membership categories and dues shall be defined in the Standing Rules." The bylaws provide that the "Standing Rules shall be just as binding as the Bylaws."

LHG's Standing Rules contain an article entitled "Active Members' Dues and Honorary Membership."  Section 1 of the article lists the dues amount for various types of membership, including $25 for an individual member.  Section 2 states:  "Payment of dues shall confer a one-year membership in the Guild from date dues are paid."  Section 3 states:  "Those members in arrears in dues for more than three months shall be considered past members."

## B. Bezis's 2016 and 2017 Demands

On July 17, 2016, Bezis sent a letter to LHG that included a demand to inspect and obtain its member list pursuant to Corporations Code section 6330.[12]  The stated purposes of the demand were "to communicate with members to ensure that the Guild Executive Board is upholding the founders' mission and protecting [Livermore's Southern Pacific] Depot's best interests

---

[1] Undesignated statutory references are to the Corporations Code.

[2] Section 6330, subdivision (a) provides that a member may "[i]nspect and copy the record of all the members' names, addresses and voting rights, at reasonable times, upon five business days' prior written demand upon the corporation which demand shall state the purpose for which the inspection rights are requested" or obtain "upon written demand and tender of a reasonable charge, an alphabetized list of the names, addresses, and voting rights of those members entitled to vote for the election of directors, as of the most recent record date for which it has been compiled or as of a date specified by the member subsequent to the date of demand."  Section 6330, subdivision (c) proves that a corporation may offer "an alternative method of achieving the purpose identified in the demand without providing access to or a copy of the membership list" that "reasonably and in a timely manner accomplishes the proper purpose."  Section 6331, subdivision (a) also provides that a corporation may petition the superior court for an order setting aside the demand if it provides a reasonable alternative or has a good faith substantial basis belief that the membership list will be used for a purpose "not reasonably related" to the membership interests of the person making the demand.

as a historical resource" and "to communicate with members about Livermore Heritage Guild policies in advance of the corporation's next Annual General Meeting/Board election, likely to occur in September." LHG did not respond to that request. LHG President Jeff Kaskey later declared: "I mistakenly failed to raise Mr. Bezis's membership list request at the LHG Board meeting in August."

On September 1, 2016, Bezis sent an email repeating his demand for the member list to "communicate with them about Guild policies and Guild elections in advance of the Annual General Meeting, now just three weeks away." Kaskey responded by email and offered an alternative: "I will describe your dissent and entertain a motion to grant you a slot, say 3 minutes, to address the full attending membership. Assuming we get a second and a majority positive vote, you get your time to say whatever you like as part of the official meeting." Kaskey stated he was "trying [his] best to be fair here" and was "getting attacked" for responding at all because Bezis's initial demand had been submitted during a lapse in his membership.[3] Bezis rejected the alternative.

On April 3, 2017, Bezis sent another letter to LHG demanding its member list. The stated purposes of the demand were "to communicate with other members to encourage historical preservation of the Wagoner Winery building" and "to communicate with members about Livermore Heritage Guild actions and policies in advance of the corporation's next Annual

---

[3] Bezis disagreed with this statement, claiming he was an active member as of July 17, 2016 because he had paid membership dues in September 2015, affording him a one-year membership through September 2016. The LHG records suggest that it treated the September 2015 payment as arrears for a membership ending in June 2016, and thus there was a purported lapse in membership before Bezis's next payment via check (dated by Bezis on July 17, 2016, but dated in LHC's system as July 29, 2016).

4

General Meeting/Board election, likely to occur in September 2017." Kaskey responded by letter: "The alternative proposal is for you to provide 230 stamped envelopes, with your return address, containing your written communication to the Board and the address labels will be affixed and the letters mailed."

On July 16, 2017, Bezis sent a letter accepting the alternative with certain conditions, including that the envelopes not be opened before mailing. He stated that his purpose was "to communicate with Guild members by mail at least one month in advance of the next Annual General Meeting about my concerns about Guild affairs, including possible Bylaws amendments." Bezis also demanded to inspect various LHG records pursuant to section 6333, including the minutes of the September 2016 annual meeting, Board and membership voting records regarding the city's train depot relocation project, LHG bylaws and standing rules, and records regarding Bezis's membership and position as newsletter editor. On August 1, 2017, Kaskey sent an email attaching LHG's latest bylaws and standing rules, as well as its October 2016 meeting minutes voting in a new newsletter editor. LHG otherwise rejected Bezis's demands by stating: "Your membership application was not accepted by vote of the board on July 12, 2017. You are no longer a Livermore Heritage Guild member."

### C. Bezis's 2017 Membership Payments

LHG's records indicate that Bezis made a $25 payment via PayPal on July 4, 2017. Bezis's membership was discussed at the LHG executive board meeting on July 12, 2017. The meeting minutes state: "Jason Bezis has sent in his Membership through PAYPAL. $25 He is expressing interest in being editor of the newsletter. Discussion on what to do with his membership. Can we deny him membership? Jeff believes the answer is yes." The minutes

continue: "Motion to DENY Jason Bezis his membership brought by Jeff Kaskey. 2nd by Janet VTS. Vote: 5 in Favor, 1 Opposed; Motion CARRIES."

Bezis's July 4 payment was refunded on July 14, 2017. Bezis made seven other $25 payments via PayPal from July 15, 2017 to September 15, 2017. Those payments were also refunded.

### D. Petition for Writ of Mandate

Bezis filed his petition for writ of mandate on July 11, 2018. It sought various forms of relief, including (1) reinstatement of his membership and provision of a "full and fair noticed hearing" pursuant to section 5341[4] as to any grounds for expulsion, suspension, or termination; and (2) enforcement of his demands to inspect and obtain the LHG member list, and inspect LHG records. The petition also included a request for attorney fees pursuant to section 6337 and "other legal authority."[5]

---

[4] Section 5341, subdivision (a) provides: "No member may be expelled or suspended, and no membership or membership rights may be terminated or suspended, except according to procedures satisfying the requirements of this section. An expulsion, termination or suspension not in accord with this section shall be void and without effect." Section 5341, subdivision (b) requires any expulsion, suspension or termination to be done "in good faith and in a fair and reasonable manner." Section 5341, subdivision (c) sets forth a fair and reasonable procedure (including 15-day notice and opportunity to be heard), but pursuant to subdivision (b), the court "may also find other procedures to be fair and reasonable when the full circumstances of the suspension, termination, or expulsion are considered."

[5] Section 6337 provides: "In any action or proceeding under this article, and except as required by Section 6331, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award the member reasonable costs and expenses, including reasonable attorneys' fees, in connection with such action or proceeding."

### E. LHG's September 22, 2018 Meeting

LHG held an annual meeting "on or about September 22, 2018." According to LHG board member Don Smith, LHG members adopted bylaw amendments at this meeting that "included changes to membership status, the records that the Secretary had to maintain, quorum requirements, and procedures for amending the Bylaws." Smith declared, "Most of these changes were simply efforts to clean up the language of the Bylaws and put the Bylaws in line with current practices, such as to address the fact that most members do not attend the annual meetings for a vote."

Bezis declared that the bylaw amendments "presumably were adopted in response to my writ action." The bylaw providing that LHG membership "shall be open to any individual, family or organization ascribing to the above Mission and having an interest in promoting its objectives" was changed to state that " '[t]he Executive Board may accept as a member' " any such individual, family or organization. The amendments also lowered the quorum requirement to "whoever shows up at the meeting," and weakened the bylaw amendment process by only requiring notice of amendments through posting on a website (not U.S. mail).

### F. First Amended Petition

On October 24, 2018, Bezis filed a first amended petition for writ of mandate. It included the original causes of action for reinstatement of Bezis's membership and enforcement of his demands, but added causes of action seeking to nullify (1) "the immediately past election electing directors of defendant corporation" pursuant to section 5617;[6] and (2) the vote of the

---

[6] Section 5617, subdivision (a) provides: "Upon the filing of an action therefor by any director or member, or by any person who had the right to vote in the election at issue, the superior court of the proper county shall

7

members on the bylaws amendments pursuant to section 5341, subdivision (e).[7]

### G. *Order Denying Petition*

On February 21, 2020, the trial court held a hearing on the merits of the petition. On March 12, 2020, the trial court issued a written opinion denying the petition. As to the request for reinstatement of membership, the trial court found that no period of membership was created by Bezis's "attempted" payments of dues between July 4 and September 14, 2017. It found that LHG was under no clear, present duty to accept those dues and commence a one-year membership, citing section 5313 that provides: "Except as provided in its articles or bylaws, a corporation may admit any person to membership." The trial court found nothing in LHG's bylaws or standing rules that obligated LHG to accept Bezis's membership. The court thus concluded that LHG had no clear, present duty to afford Bezis any procedure under section 5341 because it had not expelled or terminated his membership.

---

determine the validity of any election or appointment of any director of any corporation."

[7] Section 5341, subdivision (e) provides, in relevant part, that "no vote of the members or of the board may be set aside solely because a person was at the time of the vote wrongfully excluded by virtue of the challenged expulsion, suspension or termination, unless the court finds further that the wrongful expulsion, suspension or termination was in bad faith and for the purpose, and with the effect, of wrongfully excluding the member from the vote or from the meeting at which the vote took place, so as to affect the outcome of the vote."

The first amended petition also included a cause of action for defamation, but Bezis dismissed this claim without prejudice on February 28, 2020.

8

As to the request for enforcement of Bezis's demands for the member list and LHG records, the trial court concluded that this request failed under the doctrine of laches. It found that Bezis had unreasonably failed to respond to LHG's proposed reasonable alternative (the stamped envelopes) for months and took no legal action to enforce his requests until after the annual meetings (the stated purpose of the demands), and LHG relied on his abandonment of those requests when it held those meetings and conducted its business as scheduled. The trial court denied Bezis's request for attorney fees under section 6337 because he lacked a present beneficial interest in the demanded inspections and failed to seek timely judicial intervention to enforce his inspection rights.

As to the request for nullification of the elections and bylaw amendments, the trial court found there was no basis to set aside these votes because Bezis's membership had lapsed and he was thus not wrongfully excluded from the meeting. It also found Bezis lacked a present beneficial interest to enforce the LHG bylaws.

### H. Motion for Reconsideration

Bezis filed a motion for reconsideration on July 7, 2020. It stated that on June 15, 2020, the trial court had signed a second order denying his petition and that this order contained inconsistencies with the first March 12, 2020 order. It also argued that the trial court should reconsider its March 12, 2020 order based on different law and different facts. Among other things, it argued that LHG was not entitled to a laches defense because it had unclean hands. It also cited *Summers v. Colette* (2019) 34 Cal.App.5th 361 (*Summers*) for the proposition that Bezis had standing to challenge LHG's actions.

The trial court denied the motion, finding that the cited law and facts had been available to Bezis at the time of the merits hearing. It explained

9

that the court had "improvidently" signed the second June 15, 2020 order and, on its own motion, vacated and struck that order as void. Judgment was entered in favor of LHG. This appeal followed.

## DISCUSSION

In this appeal, Bezis challenges both the trial court's denial of his petition for writ of mandate and its denial of his motion for reconsideration. We address each in turn.

## I. Denial of Petition for Writ of Mandate

Bezis argues that the trial court denied his writ petition based on incorrect interpretations of law and insufficient evidence to support its findings. Before turning to the merits of these arguments, we set forth the general framework governing petitions for writ of mandate.

### A. General Framework

Code of Civil Procedure section 1085, subdivision (a) provides: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." In order to obtain such relief, the petitioning party must establish (1) a " ' "clear, present and usually ministerial duty" ' " of the respondent; and (2) a " ' "clear, present and beneficial right" ' " of the petitioner to performance. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) The petitioner bears the burden of pleading and proving the facts upon which the claim for relief is based. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153.)

10

"In reviewing the trial court's denial of the writ, we must determine whether its findings and judgment are supported by substantial evidence." (*Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289.) "However, where the facts are undisputed and a question of law is involved, we may exercise our independent judgment." (*Ibid.*) With these general principles in mind, we turn to Bezis's arguments regarding the requests in his writ petition: (1) reinstatement of membership; (2) enforcement of LHG member list and record demand; (3) nullification of bylaw amendments; and (4) request for attorney fees.

### B. Reinstatement of Membership

Bezis argues that the trial court erred in denying his petition for reinstatement of membership because (1) the trial court incorrectly interpreted section 5341 and there was insufficient evidence to support its finding that LHG had not expelled or terminated his membership; and (2) Bezis was entitled to such relief under Code of Civil Procedure section 1085.

We agree that the LHG bylaws and standing rules, as well as the evidence regarding Bezis's payments, do not support the trial court's finding that section 5341 was inapplicable here. Under LHG's then-existing bylaws, membership was "open to any individual . . . ascribing to the above Mission and having an interest in promoting its objectives." It further defined "members" strictly in terms of payment: as "those members who have paid their dues for the current year." The standing rules, which the bylaws explicitly declared were equally "binding" on LHG, similarly provided that payment of dues "shall confer a one-year membership in the Guild from date dues are paid." Bezis submitted a membership payment via PayPal on July 4, 2017. Bezis indicated to LHG that he had ascribed to its mission "[b]y my

11

words and conduct over the past three decades" and had an interest in promoting its objectives. Pursuant to these bylaws and standing rules, Bezis was entitled to a one-year membership from the date of his July 4, 2017 payment.

Instead of allowing Bezis's one-year membership to continue through July 4, 2018, the LHG executive board voted to "DENY" the membership on July 12, 2017, one week after Bezis had made his payment. Indeed, the meeting minutes reflect the board's uncertainty about whether they were permitted to do so: "Discussion on what to do with his membership. Can we deny him membership? Jeff believes the answer is yes." Then on July 14, 2017, 10 days after Bezis made the payment, LHG issued the refund. By ending Bezis's one-year membership after he satisfied the conditions for membership in the bylaws and standing rules, LHG terminated the one-year membership. Section 5341, subdivision (a) requires that no member may be expelled "except according to procedures satisfying the requirements of this section." Accordingly, Bezis was entitled to fair and reasonable procedures regarding that termination under section 5341.

LHG's citation to various authorities does not alter this conclusion. Section 5313 states: "*Except as provided in its articles or bylaws*, a corporation may admit any person to membership." (Italics added.) *Marin County Bd. of Realtors, Inc. v. Palsson* (1976) 16 Cal.3d 920 explained, "It has never been the law in California that a voluntary association may be forced to open its membership rolls to all who apply." (*Id.* at p. 938.) While membership may be permissive as a general rule, these authorities make clear that LHG's discretion on membership was limited by its then-existing bylaws and standing rules. Finally, *Harris v. Mothers Against Drunk Driving* (1995) 40 Cal.App.4th 16 affirmed summary judgment for the organization on

12

a discrimination claim where the plaintiff had been banned for her disruptive conduct. (*Id.* at p. 23.) That case has no bearing on whether Bezis was entitled to a one-year membership under LHG's bylaws.

Nor are we persuaded by LHG's argument that it properly denied Bezis membership because he did not ascribe to LHG's mission. As explained above, Bezis's July 4, 2017 payment entitled him to a one-year membership. The LHG board vote on July 12 was a termination of that membership, not a denial. In any event, Kaskey told Bezis that each LHG board member had "their personal reasons for their vote" to deny Bezis's membership, but his vote was based on his "unfounded personal and organizational attacks in broad public forums." We are not convinced that this constitutes substantial evidence that Bezis did not ascribe to LHG's mission for awareness and protection of Livermore's heritage and historic resources.

While we agree that Bezis was entitled to a one-year membership that was terminated without any procedures under section 5341, we are not persuaded by his argument that he was entitled to the relief requested in his petition: reinstatement of membership and a "full and fair" noticed hearing as to "any grounds" LHG may have for his expulsion, suspension, or termination. Code of Civil Procedure section 1085 requires that the petitioner seeking writ of mandate relief establish a " ' "clear, present and beneficial right" ' " to such relief. (*City of Dinuba v. County of Tulare, supra,* 41 Cal.4th at p. 868.) Here, Bezis has shown that his July 4, 2017 payment entitled him to a one-year membership, and that LHG's July 12, 2017 termination of that membership entitled him to procedures under section 5341. There is no evidence that Bezis made any payments that would have entitled him to membership beyond the 2017-2018 year. Bezis thus failed to establish that he has a clear, present and beneficial right to reinstatement as

13

a current member of LHG or any section 5341 procedures related to a current membership.

Bezis offers two alternative arguments to the contrary, neither of which we find persuasive. First, Bezis relies on *Summers, supra,* 34 Cal.App.5th 361 to argue that he was not required to have "continued membership" with LHG to obtain the relief he requests. In *Summers*, a director of a nonprofit public benefit corporation filed an action claiming that another director had engaged in self-dealing and orchestrated an unlawful vote to remove her from the board. (*Id.* at p. 364.) After filing the action, the board again voted to remove Summers as a director. (*Id.* at p. 365.) *Summers* concluded that she had standing as a "director" to maintain her action. (*Id.* at pp. 367–368.) Here, unlike *Summers*, Bezis was only entitled to a 2017-2018 membership. There was no basis for the trial court to afford him a current LHG membership, or the associated rights with such membership.

Second, Bezis argues that he has "public interest standing" to pursue this action because it raises an "important public interest in ensuring proper procedure." "As a general rule, a party must be 'beneficially interested' to seek a writ of mandate." (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.) " 'The requirement that a petitioner be "beneficially interested" has been generally interpreted to mean that one may obtain the writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' " (*Ibid.*) But under the doctrine of public interest standing, " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the

14

laws executed and the duty in question enforced." ' " (*Id.* at p. 166.) This exception " 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*Ibid.*) Bezis offers no authority to support his position that the exception applies here. Bezis sought current reinstatement of membership in a nonprofit corporation based on a previous version of its bylaws that are no longer in effect.

In sum, we conclude that the trial court did not err in denying Bezis's petition for reinstatement of his membership and associated request for procedures pursuant to section 5341.

### C. Enforcement of LHG Member List and Record Demands

Bezis argues that the trial court erred in denying his petition for enforcement of his member list and inspection demands because LHG did not provide a timely response or reasonable alternative to these demands. He also argues that there was insufficient evidence to support the trial court's application of laches, and that LHG was not entitled to a laches defense because it had unclean hands.

We conclude that there was substantial evidence to support the trial court's application of laches. "[T]he affirmative defense of laches requires unreasonable delay in bringing suit 'plus either acquiesence [*sic*] in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' " (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.) "Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained." (*Ibid.*)

15

Here, the trial court found that Bezis had unreasonably delayed his legal action "until after the annual general membership meetings that were the reasons for his requests," and that LHG was prejudiced because it "relied on his abandonment of those requests when it held those meetings and conducted business as scheduled." Bezis made his first two demands on July 17 and September 1, 2016, with the stated intent to communicate with members before the September 2016 annual meeting. Bezis made his third and fourth demands on April 3 and July 16, 2017, with the stated intent to communicate with members before the September 2017 meeting. Bezis waited two years after his initial demand to file this action. In the interim, LHG proceeded with its annual meetings on September 17, 2016 and September 15, 2017. We thus conclude that there was sufficient evidence of unreasonable delay and prejudice to support the trial court's application of laches.

Bezis also argues that, even if there was sufficient evidence to support laches, LHG was not entitled to the defense because it had unclean hands. As a preliminary matter, the record indicates that this argument was raised for the first time in Bezis's motion for reconsideration and, as explained below, the trial court did not abuse its discretion in denying that motion for failure to raise such arguments at the merits hearing. In any event, we are not persuaded that the trial court's application of laches—and its implicit determination that LHG was not precluded from the defense by unclean hands—constituted an abuse of discretion. (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109 [trial court's decision of whether to apply unclean hands doctrine is reviewed for abuse of discretion].)

"Laches is an equitable remedy, and as a general rule, a party seeking equitable relief must come into court with clean hands." (*In re Marriage of*

*Cutler* (2000) 79 Cal.App.4th 460, 478.) " 'The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief.*" ' " (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1166.) Accordingly, the determination must be based on LHG's conduct related to Bezis's member list and record demands, not more generally. Conduct that "violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979 (*Kendall-Jackson*).)

Here, LHG failed to respond to Bezis's initial demand after Kaskey "mistakenly failed" to raise it at the board meeting. In the response to Bezis's second demand, Kaskey noted his understanding that the initial demand had been made during a lapse in Bezis's membership, consistent with LHG's records that Bezis had previously paid for a membership that ended in June 2016. LHG stated that it did not accept Bezis's conditions to its alternative proposal because "it is the Board's responsibility to verify that the mail sent by the Board to the members is not libelous, grossly untrue or illegal, and is relevant to the issue at hand." Given this evidence, the trial court was well within its discretion to determine that LHG did not engage in bad faith conduct sufficient to preclude it from the laches defense. (*Kendall-Jackson, supra*, 76 Cal.App.4th at p. 979.)

We thus conclude that the trial court did not err in denying Bezis's petition for enforcement of his membership list and other record inspection demands based on laches.[8]

---

[8] Given this conclusion, we need not address Bezis's arguments regarding the sufficiency of LHG's response to his demands and do not express an opinion as to their reasonableness. Nor do we need to address

### D. Nullification of Bylaw Amendments

Bezis argues that the trial court erred in denying his petition to nullify the bylaw amendments adopted at the September 2018 LHG annual meeting because he was wrongfully excluded from the vote. We disagree.

Section 5341, subdivision (e) provides that "no vote of the members or of the board may be set aside solely because a person was at the time of the vote wrongfully excluded by virtue of the challenged expulsion, suspension or termination, unless the court finds further that the wrongful expulsion, suspension or termination was in bad faith and for the purpose, and *with the effect, of wrongfully excluding the member from the vote or from the meeting at which the vote took place, so as to affect the outcome of the vote*." (Italics added.)

As explained above, Bezis made membership payments to LHG from July 15, 2017 to September 15, 2017. There is no evidence that Bezis made any payments after that date. Even using September 15, 2017 as the start of a one-year membership period, that membership would have lapsed on September 15, 2018. Bezis alleged that LHG's 2018 annual meeting was held "on or about September 22," one week *after* this purported membership would have ended. Accordingly, Bezis was not wrongfully excluded from the September 22, 2018 vote because his membership had already expired. As he was not wrongfully excluded "at the time of the vote," it could not be set aside under section 5341, subdivision (e). We thus conclude that the trial court did not err in denying Bezis's petition for nullification of the bylaw amendments.

---

Bezis's argument that his demands are not moot because they are "capable of repetition, yet evading review."

18

### E. Attorney Fees

Bezis argues that the trial court abused its discretion in denying his attorney fee request for two reasons. (*Choi v. Orange County Great Park Corp.* (2009) 175 Cal.App.4th 524, 534 [applying abuse of discretion standard on denial of attorney fee request].)

First, Bezis argues that *if* the trial court had reinstated his membership, it could have awarded attorney fees under section 6337. We are not persuaded by the argument because, as explained above, the trial court did not err in denying Bezis's petition for reinstatement. Moreover, we note that section 6337 affords the trial court with *discretion* to award reasonable attorney fees "if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification." While the trial court found that LHG had not made a timely response to all of Bezis's demands, it ultimately determined that Bezis's request for judicial intervention failed under the doctrine of laches. Given this context, we see no basis to conclude that the trial court abused its discretion under section 6337 here.

Second, Bezis contends that the trial court could have also awarded attorney fees under other statutory provisions. He claims that the trial court "ignored" section 5341, subdivision (e), which authorizes a trial court to order "any relief . . . it finds equitable under the circumstances" where an action challenging a membership expulsion, suspension or termination is successful. Bezis also contends he is entitled to fees under Code of Civil Procedure section 1021.5, which provides that a court "may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest" if certain additional requirements are met. Again, we are not persuaded. As detailed above, we conclude that the trial court did not err in

19

denying Bezis's petition and therefore his action cannot be considered "successful" under either provision.

In sum, we conclude that the trial court did not abuse its discretion in denying Bezis's request for attorney fees.

### F. Denial of Motion for Reconsideration

In addition to the denial of his petition, Bezis also challenges the denial of his motion for reconsideration by rejecting his assertion of facts or law that were available at the time of the merits hearing. We review the trial court's ruling for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

Code of Civil Procedure section 1008, subdivision (a) provides that any party affected by an order may seek reconsideration based on "new or different facts, circumstances, or law." The party seeking reconsideration, however, "must provide not just new evidence or different facts, but a satisfactory explanation for the failure to produce it at an earlier time." (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) Bezis argues that the trial court misapplied this standard because it "overlooked" the assertion by his counsel that he was unaware of the *Summers* decision at the time of the merits hearing. Bezis provides no authority that counsel's ignorance at a February 2020 hearing of an authority issued in April 2019 is a satisfactory explanation of the failure. In any event, as detailed above, *Summers* does not support Bezis's argument that he is entitled to the relief requested in his petition. We thus conclude that the trial court did not abuse its discretion in denying the motion for reconsideration.

### DISPOSITION

The March 12, 2020 order is affirmed. The parties shall bear their own costs on appeal.

20

NADLER, J.*

WE CONCUR:

POLLAK, P. J.
STREETER, J.

---

\* Judge of the Sonoma County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.